UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: COLUMBIA COLLEGE RANKINGS ACTION<br><br><br>This Document Relates To:<br><br>All Actions. | Case No.  1:22–cv–05945-PGG<br><br>(Consolidated with Case No. 1:22–cv–06567–PGG) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED PUTATIVE CLASS ACTION COMPLAINT

DEBEVOISE & PLIMPTON LLP
  Maura K. Monaghan
  Kristin D. Kiehn
  Aasiya F. Mirza Glover
66 Hudson Blvd.
New York, New York 10001
(212) 909-6000
mkmonaghan@debevoise.com
kdkiehn@debevoise.com
afmglover@debevoise.com

*Attorneys for Defendant The Trustees of Columbia University in the City of New York*

February 10, 2023

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................... 1

Statement of Facts and Allegations .............................................................................. 4

    A.   USNWR College Rankings ............................................................................. 4

    B.   The Thaddeus Post .......................................................................................... 5

    C.   Plaintiffs' Allegations ..................................................................................... 6

Argument ....................................................................................................................... 7

    A.   Plaintiffs Lack Article III Standing. ............................................................... 7

        1.   Plaintiffs Fail to Allege an Injury Arising From the 2022 USNWR Ranking. ............................................................................................. 8

        2.   Plaintiffs Fail to Allege an Injury Based on Undergraduate Class Size. .......... 8

        3.   Plaintiffs Who Were Graduate Students Could Not Have Been Injured by Undergraduate Rankings or Data Points ................................................ 11

    B.   The Complaint Fails To State A Claim For Relief. ....................................... 11

        1.   The GBL § 349 and § 350 Claims Fail. ............................................... 12

        2.   The Breach-of-Contract Claim Fails. .................................................. 15

        3.   The Unjust Enrichment Claim Fails. ................................................... 19

    C.   The Claims of Several Plaintiffs Are Time-Barred. ..................................... 20

    D.   The Complaint Should Be Dismissed With Prejudice .................................. 22

Conclusion ................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Abbas v. Dixon,*
    480 F.3d 636 (2d Cir. 2007)................................................................................21

*Amable v. New School,*
    551 F. Supp. 3d 299 (S.D.N.Y. 2021)..................................................16, 17, 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................11, 12

*Bausch & Lomb Inc. v. Bressler,*
    977 F.2d 720 (2d Cir. 1992).........................................................................18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................................12

*Bevelacqua v. Brooklyn Law School,*
    2013 WL 1761504 (N.Y. Sup. Ct. Apr. 22, 2013)........................................10, 14

*Broder v. Cablevision Systems Corp.,*
    418 F.3d 187 (2d Cir. 2005)............................................................................4

*Corsello v. Verizon N.Y. Inc.,*
    967 N.E.2d 1177 (N.Y. 2012)........................................................................19

*Cosgrove v. Oregon Chai, Inc.,*
    520 F. Supp. 3d 562 (S.D.N.Y. 2021)............................................................12

*Cruz v. D.F. Stauffer Biscuit Co., Inc.,*
    2022 WL 4592616 (S.D.N.Y. Sept. 29, 2022) (Gardephe, J.)..............................22

*Doe v. Columbia University,*
    551 F. Supp. 3d 433 (S.D.N.Y. 2021)............................................................11

*Donohue v Copiague Union Free School District,*
    391 N.E.2d 1352 (N.Y. 1979).........................................................................15

*DSB Holdings, LLC v. Harvard Steel Sales, LLC,*
    2021 WL 4944287 (2d Cir. Oct. 25, 2021)......................................................17

*Ellul v. Congregation of Christian Brothers,*
    774 F.3d 791 (2d Cir. 2014)...........................................................................20

*Fero v. Excellus Health Plan, Inc.,*
    502 F. Supp. 3d 724 (W.D.N.Y. 2020) .........................................................13

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013)..................................................................................13

*Gale v. International Business Machines Corp.,*
    781 N.Y.S.2d 45 (App. Div. 2004) ........................................................................14

*Gally v. Columbia University,*
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)......................................................................16

*Gerstle v. National Credit Adjusters, LLC,*
    76 F. Supp. 3d 503 (S.D.N.Y. 2015)......................................................................13

*Gleason v. Spota,*
    599 N.Y.S.2d 297 (App. Div. 1993) ......................................................................21

*Goldberg v. Pace University,*
    535 F. Supp. 3d 180 (S.D.N.Y. 2021)....................................................................16

*Gomez-Jimenez v. N. Y. Law School,*
    943 N.Y.S.2d 834 (Sup. Ct. 2012),
    *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012) ........................................................10, 14

*Himmelstein, McConnell Gribben, Donaghue & Joseph, LLP v.*
    *Matthew Bender & Co., Inc.,*
    100 N.Y.S.3d 227 (App. Div. 2019) ......................................................................13

*In re Ford Fusion & C-Max Fuel Economy Litigation,*
    2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ......................................................19

*In re Livent, Inc. Noteholders Securities Litigation,*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................4, 12

*Summit Properties International, LLC v. Ladies Professional Golf Association,*
    2010 WL 4983179 (S.D.N.Y. Dec. 6, 2010) ........................................................18

*Izquierdo v. Mondelez International, Inc.,*
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ......................................................10

*Kamdem-Ouaffo v. Pepsico, Inc.,*
    2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015) ........................................................19

*Klausner v. Annie's, Inc.,*
    581 F. Supp. 3d 538 (S.D.N.Y. 2022)....................................................................19

*Koch v. Christie's International PLC,*
    699 F.3d 141 (2d Cir. 2012)..................................................................................21

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014)................................................................19, 21

*Le Bouteiller v. Bank of N.Y. Mellon*,
   2015 WL 5334269 (S.D.N.Y. 2015) (Gardephe, J.) .................................................22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................................7, 11

*Matter of Estate of Reich*,
   172 N.Y.S.3d 289 (App. Div. 2022) ......................................................................20

*McMorris v. Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021)....................................................................................7

*Mihalakis v. Cabrini Medical Center*,
   542 N.Y.S.2d 988 (App. Div. 1989) .......................................................................10

*Nungesser v. Columbia University*,
   169 F. Supp. 3d 353 (S.D.N.Y. 2016)...............................................................12, 16

*Oden v. Boston Scientific Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ....................................................................13

*Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*,
   2018 WL 10579873 (S.D.N.Y. Sept. 19, 2018) (Gardephe, J.)..................................16

*Pu v. Russell Publishing Group, Ltd.*,
   2016 WL 9021990 (S.D.N.Y. Sept. 2, 2016),
   *aff'd*, 683 F. App'x 96 (2d Cir. 2017)....................................................................18

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004).....................................................................................4

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
   192 F. Supp. 3d 348 (S.D.N.Y. 2016).....................................................................19

*Selvam v. Experian Information Solutions, Inc.*,
   2015 WL1034891 (E.D.N.Y. Mar. 10, 2015).........................................................22

*Small v. Lorillard Tobacco Co., Inc.*,
   698 N.Y.S.2d 615 (1999).......................................................................................12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)................................................................................................7

*St. John's University, N. Y. v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) ....................................................................21

*Statler v. Dell, Inc.*,
    841 F. Supp. 2d 642 (E.D.N.Y. 2012) ................................................................21

*Tears v. Boston Scientific Corp.*,
    344 F. Supp. 3d 500 (S.D.N.Y. 2018) ...............................................................14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................3, 7

*V.E.C. Corp. of Delaware v. Hilliard*,
    896 F. Supp. 2d 253 (S.D.N.Y. 2012) ...............................................................20

*W.R. Huff Asset Management. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) .............................................................................7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................8

*Wedgewood Care Center, Inc. v. Kravitz*,
    154 N.Y.S.3d 312 (App. Div. 2021) .................................................................16

*Whiteside v. Hover-Davis, Inc.*,
    995 F.3d 315 (2d Cir. 2021) ............................................................................12

**Statutes**

N.Y. Gen. Bus. Law § 349 ............................................................................ *passim*

N.Y. Gen. Bus. Law § 350 ...................................................................1, 3, 12, 14

**Other Authorities**

Federal Rule of Civil Procedure Rule 9(b) ...........................................................1, 19

Federal Rule of Civil Procedure 12(b)(1) .................................................................1

Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 20

N.Y. C.P.L.R. § 213(2) ......................................................................................20

Defendant The Trustees of Columbia University in the City of New York ("Defendant") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) to dismiss the Consolidated Class Action Complaint (the "Complaint") filed by Plaintiffs Ravi Campbell ("Campbell"), Student A, Student B, Student C, and Student D (collectively "Plaintiffs") (ECF No. 32).

## PRELIMINARY STATEMENT

Plaintiffs are former undergraduate and graduate students of Columbia University who seek to obtain some sort of monetary relief on a theory that they were misled by Columbia's U.S. NEWS & WORLD REPORT ("USNWR") ranking. Plaintiffs cite a post by a Columbia professor who alleged that Defendant reported certain inaccurate data to USNWR in connection with that publication's 2022 college rankings, long after Plaintiffs attended Columbia at various points between 2011 and 2019. In an attempt to overcome this temporal gap, Plaintiffs allege in this newest iteration of the Complaint "on information and belief" that Defendant misreported a single data point to USNWR about undergraduate class size beginning in 2011. Plaintiffs claim they would not have enrolled at Columbia had they known of the allegedly inaccurate reporting to USNWR about this one factor, nor agreed to pay a "premium" for tuition. Alleging they did not receive the benefits of attending a top-ranked school, Plaintiffs bring claims for deceptive practices under New York General Business Law §§ 349 and 350, breach of contract, and unjust enrichment, and seek to certify a class of all students enrolled since 2011. The Complaint fails in myriad fundamental ways and should be dismissed as a matter of law.

As an overriding matter, Plaintiffs' allegations are presented in the most general and conclusory of terms, entirely devoid of supporting facts. They do not identify a single promise or representation made to them by Defendant, let alone one about USNWR rank or undergraduate class size to which they were exposed. They do not allege any facts to show that

they personally considered or relied upon Columbia's USNWR rank or information about undergraduate class size when deciding to enroll at Columbia. And they do not allege any facts pertaining to their actual class sizes, let alone anything else to suggest that their educational experience was lacking in any way whatsoever. In reality, the sparsely pleaded Complaint is simply an attempt to leverage a professor's critique of Columbia's ranking methodologies into a monetary recovery.

The Complaint fails at the threshold: Plaintiffs lack Article III standing because they do not allege an injury-in-fact. None of the Plaintiffs could have relied upon, or been misled by, Columbia's 2022 USNWR rank, given that each enrolled in 2019 or earlier. To overcome this temporal mismatch, they extrapolate a single data point from the professor's analysis and allege "on information and belief" that, beginning in 2011, Defendant misreported data to USNWR about the percentage of undergraduate classes enrolling fewer than 20 students. Relying on a subsequent correction to the figures for the 2022 ranking, Plaintiffs assert that one can plausibly assume this figure was misreported in earlier years because the reported student-faculty ratio remained stable. Yet the Complaint is devoid of any allegation that Plaintiffs' own class sizes exceeded a data point reported to USNWR, or even that undergraduate class size was a material consideration to Plaintiffs. Indeed, none of the Plaintiffs allege that they changed their enrollment decision or opted to transfer once they witnessed their class sizes. The claims of Students A, C, and D are even more attenuated because, as graduate students, they could not have been injured in relation to data reported in connection with USNWR's undergraduate ranking or by undergraduate class sizes. The student-faculty ratio upon which Plaintiffs rely to

try and avoid their temporal mismatch does not relate to graduate programs. These fundamental disconnects are dispositive: "No concrete harm, no standing."[1]

The Complaint also fails to state a viable cause of action. The lack of factual support dooms each of the claims. The GBL § 349 and § 350 claims fail because Plaintiffs do not allege that they personally were exposed to a specific misrepresentation or advertisement, and because their theory of damages—premised on a "price premium" paid for tuition—has been rejected by courts as impermissibly speculative. Indeed, a price premium theory is entirely inapplicable in the educational context, as it would require a court to wade into abstract determinations about the "true value" of an education or degree. The contract claim fails for multiple reasons. A claim premised on a theory that Plaintiffs did not receive an education worth what they paid for is not cognizable because New York prohibits claims for educational malpractice. Aside from this conceptual defect, Plaintiffs fail to identify a discrete promise that was broken and, again, their damages theory is impermissibly speculative. The unjust enrichment claim fails because it is duplicative and Plaintiffs do not plead fraud allegations with particularity. Finally, several Plaintiffs' claims are time-barred, having expired long before the Complaint was filed.

For these and the following reasons, the Complaint should be dismissed in full and with prejudice. This is Plaintiffs' second bite at the apple—they had a preview of Defendant's arguments when they received the motion to dismiss the original complaints.[2] Nonetheless, they have failed to remedy the numerous identified deficiencies. If Plaintiffs could allege a specific misrepresentation or contractual promise made to them, they would have done so. Permitting amendment would be futile and, thus, dismissal with prejudice is appropriate.

---

[1]   *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

[2]   In accordance with a party stipulation, on September 30, 2022, Defendant served Plaintiffs with a motion to dismiss the two original complaints filed by Campbell and Student A.

## STATEMENT OF FACTS AND ALLEGATIONS

### A.   USNWR COLLEGE RANKINGS

Columbia is a private research university located in New York with an enrollment of approximately 30,000 undergraduate, graduate, and professional students.  Compl. ¶¶ 18–19.[3] USNWR is a publisher that generates and assigns rankings to a variety of educational offerings. *Id*. ¶ 26; *see also id*. ¶ 44 n.5 (citing Michael Thaddeus, An Investigation of the Facts Behind Columbia's U.S. News Ranking (Feb. 2022, revised Mar. 2022)), § 1, attached as Exhibit A to the Declaration of Aasiya F. M. Glover ("Glover Decl.").[4]  Since 1988, Columbia has been ranked by USNWR.  Compl. ¶ 42.

The USNWR "Best Colleges" rankings rank undergraduate programs into four categories:  (<u>i</u>) National Universities; (<u>ii</u>) National Liberal Arts Colleges; (<u>iii</u>) Regional Universities; and (<u>iv</u>) Regional Colleges.  *Id*. ¶ 29 n.3 (citing Robert Morse & Eric Brooks, *A More Detailed Look at the Ranking Factors*, U.S. News & World Report (Sept. 12, 2021)), attached as Exhibit B to the Glover Decl.  Notwithstanding Plaintiffs' assertions in their response to Defendant's pre-motion letter to the Court, the "Best Colleges" ranking rates undergraduate programs, not graduate programs.  *See* Glover Decl. Ex. B (USNWR article explaining that the ranking factors are for "undergraduate rankings"); *see also* Compl. Ex. A (explaining USNWR ranking methodology for "the country's four-year colleges and universities").

---

[3]   References to "Compl." are to the Complaint.  The Complaint's factual allegations are accepted as true solely for the purpose of Defendant's motion to dismiss, except to the extent they are contradicted by documents cited in the Complaint.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404–06 (S.D.N.Y. 2001).

[4]   Documents incorporated by reference into a complaint may be considered without converting a motion to dismiss into a motion for summary judgment.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005); *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

USNWR evaluates undergraduate programs using 17 "measures of quality" deemed relevant to the undergraduate experience.  Compl. ¶ 29.  Normalized scores for each measure are weighted and added together by USNWR, according to a proprietary formula, to arrive at a final overall score.  *Id*.  The most heavily weighted factors are graduation and retention rates, which account for 35% of the score, and peer reputation, which accounts for 20% of the score.  Glover Decl. Ex. A §§ 7, 8.  One of the other 17 survey measures is undergraduate class size, which comprises 8% of the USNWR ranking.  *Id*. § 2.  The undergraduate class size measure is formulated based on a weighted average of five data points:  percentage of undergraduate classes with (a) fewer than 20 students; (b) 20–29 students; (c) 30–39 students; (d) 40–49 students; and (e) 50 students or more.  *Id.*  As such, one or two additional students can move a class into a different category.  The weights assigned to each of the five data points that make up the undergraduate class size survey measure are not disclosed by USNWR.

Columbia has been a top-ranked university since the early days of the USNWR rankings; as early as 1989, Columbia was ranked in 8th place.  Compl. ¶ 50; Glover Decl. Ex. A § 1.

## B.   THE THADDEUS POST

In February 2022, Columbia mathematics professor Michael Thaddeus posted an essay on his website analyzing USNWR's 2022 "Best Colleges" ranking, which was published in September 2021.  Compl. ¶¶ 44–45; Glover Decl. Ex. A.  Specifically, Thaddeus examined data reported by Defendant to USNWR for a subset of the 17 survey measures that USNWR used to generate its 2022 ranking of Columbia's undergraduate program in the "National Universities" category pursuant to USNWR's proprietary algorithm.  Compl. ¶¶ 44–45; Glover Decl. Ex. A.  These measures included undergraduate class size; percentage of full-time faculty who hold a terminal degree; percentage of non-medical faculty who are full-time; student-faculty ratio; and instructional expenditures.  Compl. ¶ 45.  Thaddeus concluded that data reported to USNWR for

these measures were inaccurate as compared to data he reviewed from other sources.  *Id.*; Glover Decl. Ex. A.

In the summer of 2022, Columbia announced that it would not report data to USNWR for the next undergraduate rankings cycle in order to review questions raised by Thaddeus. Compl. ¶¶ 46–47.   USNWR then announced that it had removed Columbia from certain rankings, *id.* ¶ 48, but took no action with respect to Columbia's graduate-level schools and programs because they were reported through a separate process.   Columbia subsequently announced revised figures for the percentage of undergraduate classes enrolling fewer than 20 students in 2021–2022 (57% rather than 83%) and for the percentage of faculty holding terminal degrees in 2021–2022 (95% rather than 100%).  *Id.* ¶¶ 61–63.

In his post, Thaddeus opined that the "entire enterprise" of ranking universities is "flawed, not only in detail but also in conception," and that the USNWR ranking system specifically is "irredeemable" because "rankings provide the wrong information."  Glover Decl. Ex. A § 8.  According to Thaddeus, "what universities offer is far too complex to be projected to a single parameter" and "any ranking is a composite of factors, not all of which pertain to everyone."   *Id.*   Thaddeus concluded that "Columbia is a great university and, based on its legitimate merits, should attract students comparable to the best anywhere."  *Id.*

## C.   PLAINTIFFS' ALLEGATIONS

The allegations relating to Plaintiffs are entirely cursory.  Campbell enrolled at Columbia from 2014 to 2018; Student A enrolled as a graduate student from 2019 to 2021; Student B enrolled from 2014 to 2020; Student C enrolled as a graduate student from 2016 to 2020; and Student D enrolled as a graduate student from 2011 to 2015.  Compl. ¶¶ 12–16.

Plaintiffs allege in conclusory fashion that consumers, including them, "rely" upon USNWR rankings and "information implicitly contained within" the rankings "when deciding

whether to apply to and/or attend a university." *Id.* ¶¶ 22, 39.  Yet they fail to identify any specific USNWR ranking or publication that they personally reviewed or relied upon.  Instead, their sole allegation is that Defendant misreported to USNWR one of the five data points comprising the undergraduate class size survey measure from 2011 through 2020, *i.e.*, the percentage of undergraduate classes enrolling fewer than 20 students.  *Id.* ¶¶ 65–71.  But again, Plaintiffs do not allege that they personally saw or considered this data point, or that Defendant made any related representation or promise to them.  Indeed, they fail to offer any allegations to explain why they decided to enroll at Columbia.  Plaintiffs also fail to allege that their own class sizes—or any other aspect of the educational experience—fell short in any way.

## ARGUMENT

### A.   PLAINTIFFS LACK ARTICLE III STANDING.

The Complaint should be dismissed because it fails at the threshold—Plaintiffs do not allege a concrete injury and therefore lack Article III standing.

Article III standing requires an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299–300 (2d Cir. 2021).  "Particularized" injuries "affect the plaintiff in a personal and individual way." *Spokeo,* 578 U.S. at 339 (internal quotation marks omitted).  "Concrete" injuries require "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206.  As putative class representatives, Plaintiffs must possess Article III standing in their own right and cannot rely on the standing of unnamed class members. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) ("[D]istrict courts should

be mindful that *named* plaintiffs in a class action 'must allege and show that they personally have been injured . . . .'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)) (emphasis in original).

### 1.       Plaintiffs Fail to Allege an Injury Arising From the 2022 USNWR Ranking.

The springboard for Plaintiffs' allegations is the Thaddeus post and his analysis of data reported in connection with USNWR's 2022 ranking published in September 2021.  Compl. ¶¶ 44–45; Glover Decl. Ex. A § 1.  Plaintiffs each enrolled in and attended Columbia prior to 2022. Compl. ¶¶ 12–16.  None of them could have been exposed to, or relied upon, data reported to USNWR for a 2022 ranking.  Unsurprisingly, Plaintiffs make no attempt to explain how the data analyzed by Thaddeus impacted their enrollment decisions or educational experiences.  Plaintiffs simply were not—and could not have been—injured by the data discussed in the Thaddeus post.

### 2.       Plaintiffs Fail to Allege an Injury Based on Undergraduate Class Size.

Plaintiffs try to remedy this problem by extrapolating one data point from Thaddeus's analysis and alleging that, beginning in 2011, Defendant misreported data to USNWR about the percentage of undergraduate classes enrolling fewer than 20 students.   Compl. ¶¶ 64–221. However, Plaintiffs do not allege that they were exposed to, or relied upon, any representations or data pertaining to class size when making their enrollment decisions.  Nor do Plaintiffs allege that undergraduate class size was central to their bargain in enrolling at Columbia or, even presuming such a bargain was struck, that their own classes enrolled more students than they were led to expect.  The Complaint is entirely devoid of allegations about Plaintiffs' class sizes.

In their response to Defendant's pre-motion letter to the Court, Plaintiffs assert that they have adequately alleged standing because the Complaint contains "well-pled allegations" that "Columbia used its USNWR's rankings as marketing tools to recruit students," citing to Paragraphs 40 and 245 of the Complaint.  *See* Pls.' Response to Pre-Motion Letter (ECF No. 34), at 3.  However, those two paragraphs are pleaded in the most general and conclusory of terms.

Paragraph 40 states, "Universities, including Columbia, intentionally use USNWR's rankings as marketing tools to recruit students."   Paragraph 245 states, "As part of its marketing practices and recruitment efforts, Defendant made numerous statements, representations and omissions to the public, including Plaintiffs and the Class members, with respect to Columbia's USNWR ranking."   Yet Plaintiffs decline to identify even a single marketing tool, statement, representation, or omission to which they personally were exposed.   The only specific item cited is a Columbia website from November 2022 referencing the ranking for the online graduate engineering program.   Compl. ¶ 40 n.4.   Not only is this reference unrelated to the undergraduate program at issue in the USNWR 2022 "Best Colleges" ranking or to undergraduate class sizes, but Plaintiffs could not have seen this reference before deciding to enroll at Columbia.

Notwithstanding the absence of allegations of individualized injury, Plaintiffs further suggest in their pre-motion letter that they have alleged a "price premium injury" sufficient to give them Article III standing.   Pls.' Response to Pre-Motion Letter (ECF No. 34), at 3.   The Complaint alleges that "Plaintiffs and Class members paid a premium for tuition and other fees to attend Columbia, a USNWR top-ranked educational institution, with class sizes, faculty resources, student-faculty ratios, graduation and retention rates, and financial resources supportive of its USNWR ranking."   Compl. ¶ 263.   Plaintiffs' allegation is entirely implausible. The only data point allegedly misreported during the time of their enrollment was the percentage of undergraduate classes enrolling fewer than 20 students.   Even assuming the Complaint's attempt at a statistical extrapolation sufficiently alleged that Defendant misreported this data point to USNWR, Plaintiffs fail to offer any plausible explanation as to how a single purportedly inaccurate input could have materially inflated the price of tuition, particularly where that input was only one of five weighted inputs comprising the overall undergraduate class size survey

measure—which itself made up only eight percent of the USNWR ranking.  Glover Decl. Ex. A at 3. Nor do they attempt to explain how this single data point could have been material to them or a reasonable consumer.  The addition of even a small number of students to classes (which these Plaintiffs have not even alleged they took) could affect the percentages by moving classes from the under-20 group to the 20–29 group without plausibly impacting the educational experience at all.  In short, simply "recit[ing] the word 'premium' multiple times in the Complaint does not make Plaintiffs' injury any more cognizable . . . ."  *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (dismissing claim where plaintiffs failed to plausibly allege they paid a higher price than they would have absent deceptive acts).

In addition to the implausibility of the allegations, a "price premium" theory is not cognizable in the educational context.  New York courts have uniformly refused to entertain claims that would require the court to speculate on the true value of an education or degree.  *See, e.g., Bevelacqua v. Brooklyn Law Sch.*, 2013 WL 1761504, at *9 n.13 (N.Y. Sup. Ct. Apr. 22, 2013) (dismissing GBL § 349 claim against law school premised on allegedly misleading data regarding post-graduate employment and salary information because determining difference between allegedly inflated tuition payments and true value of degree would require improper speculation); *Gomez-Jimenez v. N. Y. Law Sch.*, 943 N.Y.S.2d 834, 849–51 (Sup. Ct. 2012), *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012) (dismissing GBL § 349 claim premised on inflated tuition arising from misrepresentations in marketing materials because "[t]he starting point of any such measurement is beyond this court" and would require "naked speculation"); *Mihalakis v. Cabrini Med. Ctr.*, 542 N.Y.S.2d 988, 989–90 (App. Div. 1989) (rejecting as "speculative" theory of loss premised on difference in value between internship program provided to plaintiff and program having characteristics represented by defendants, and refusing to speculate whether

plaintiff "would have done better in another" program).   Indeed, here one would need to speculate as to how a differently reported data point on undergraduate class size might have impacted Columbia's USNWR rank, if at all, and how a different raking or data point would have impacted the worth of a Columbia education and corresponding tuition fees.  *See* Glover Aff. Ex. A ("Columbia is a great university and, based on its legitimate merits, should attract students comparable to the best anywhere.").

### 3. Plaintiffs Who Were Graduate Students Could Not Have Been Injured by Undergraduate Rankings or Data Points.

Student A, C, and D lack standing for the additional reason that they attended Columbia as graduate students.  Compl. ¶¶ 13, 15–16.  Thaddeus analyzed data reported for USNWR's 2022 undergraduate "Best Colleges" ranking.  Compl. ¶ 45; Glover Decl. Ex. A; Glover Decl. Ex. B.  Plaintiffs make no attempt to explain how an undergraduate ranking, or allegedly misreported data relating to undergraduate class size, plausibly impacted their decision to enroll as graduate students, let alone how they suffered any injury as a result.

In sum, by failing to plausibly allege that they were injured in a "personal and individual way" by the challenged conduct, Plaintiffs fail to plead a cognizable injury-in-fact.  *Lujan*, 504 U.S. at 560 n.1; *see also*, *e.g., Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 457–59 (S.D.N.Y. 2021) (dismissing claims for lack of Article III standing where plaintiff failed to link challenged university conduct to a harm plaintiff personally suffered).

## B.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF.

Even if Plaintiffs had Article III standing, the threadbare Complaint is devoid of factual support and fails to state a claim for relief at the most basic level.

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) ("[C]laims must rest on well-pleaded *factual* allegations"). For a claim to be "plausible," Plaintiffs must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, although a complaint's factual allegations "are normally accepted as true on a motion to dismiss, a court "need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted . . . by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d at 405–06.

### 1.    The GBL § 349 and § 350 Claims Fail.

The GBL § 349 and § 350 claims must be dismissed for at least two reasons: Plaintiffs do not allege that they were exposed to a misrepresentation and their theory of damages is impermissibly speculative.

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). GBL § 350, while specific to false advertising claims, shares the same standard of recovery and courts "merge [the] analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021). To succeed on either claim, Plaintiffs must prove that they suffered an actual harm caused by a deceptive or misleading act or practice. *See Small v. Lorillard Tobacco Co., Inc.,* 698 N.Y.S.2d 615, 620–21 (1999) (affirming dismissal of GBL § 349 claim in absence of allegation of "actual" harm); *see also Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (noting plaintiffs must allege they "suffered injury as a result of the allegedly deceptive act or practice"). A deceptive act or practice includes a representation or

omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013).

> **(a)      Plaintiffs Fail to Allege That They Were Exposed to a Deceptive Act or Advertisement.**

Although reliance is not an element of a GBL claim, Plaintiffs must still prove causation, which at a minimum requires allegations of personal exposure to the alleged deception. *See e.g., Himmelstein, McConnell Gribben, Donaghue & Joseph, LLP v. Matthew Bender & Co., Inc*., 100 N.Y.S.3d 227, 229 (App. Div. 2019) (affirming dismissal of claim where plaintiffs failed to allege they "ever saw the allegedly deceptive representations that purportedly harmed them"); *Oden v. Bos. Sci. Corp*., 330 F. Supp. 3d 877, 902–03 (E.D.N.Y. 2018) (dismissing claim where plaintiff did not allege he "ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view either the website or the product brochure"); *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 513 (S.D.N.Y. 2015) (dismissing claim where plaintiff failed to allege he was exposed to misrepresentation); *see also Fero v. Excellus Health Plan, Inc.,* 502 F. Supp. 3d 724, 740 (W.D.N.Y. 2020) ("[W]hile a plaintiff pursuing a GBL § 349 claim need not have relied on (or even necessarily have believed) the allegedly deceptive conduct, he or she must have at least been *exposed* to it.") (emphasis added).

Even assuming that a data point relating to undergraduate class size reported to USNWR could qualify as a misrepresentation or advertisement directed at Plaintiffs, they do not allege that they personally were exposed to the allegedly inaccurate reporting.  Plaintiffs merely allege in conclusory fashion that they and other prospective students "rely" on USNWR's rankings and "information implicitly contained within" the rankings "when deciding whether to apply to and/or attend a university."  Compl. ¶ 39.  Yet Plaintiffs do not identify a single data point on undergraduate class size, or even a USNWR publication, ranking, or relevant Columbia-related

materials or methodologies, that they personally reviewed when deciding to enroll at Columbia. By failing to allege exposure to a specific misleading or deceptive statement or advertisement, Plaintiffs fail to connect the alleged conduct to an injury they personally suffered.  *See Gale v. Int'l Bus. Mach. Corp.*, 781 N.Y.S.2d 45, 47 (App. Div. 2004) (affirming dismissal of GBL § 349 and § 350 claims because "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury"); *see also Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 516–17 (S.D.N.Y. 2018) (dismissing claims where plaintiff failed to allege statement in product brochure "led to his decision" to receive implant).

### (b)   Plaintiffs' Damages Claims Are Impermissibly Speculative.

The GBL claims fail for the additional reason that Plaintiffs' theory of damages is impermissibly speculative.  Plaintiffs allege in conclusory fashion that they paid an unquantified "premium" for tuition, fees, and costs, Compl. ¶¶ 247, 260, 263, and seek damages measured by "the incremental difference" between what they paid and the amount they "would have paid Defendant or other institutions that they could have enrolled in, had the representations underlying Columbia's ranking been true."  *Id*. ¶ 262.  As explained above, *supra* pages 9–11, courts uniformly have rejected claims—including GBL claims—premised on a theory that a plaintiff paid "inflated tuition" because the court would have to engage in "naked speculation" as to what tuition a school was warranted in charging based on the true value of an educational degree.  *Gomez-Jimenez*, 943 N.Y.S.2d at 849–51 (dismissing GBL § 349 claim); *see also Bevelacqua*, 2013 WL 1761504, at *9 n.13 (dismissing GBL § 349 claim).

Plaintiffs' impermissible theory of damages is another reason dismissal is required.

2.        **The Breach-of-Contract Claim Fails.**

Plaintiffs' contract claim fails for three basic reasons: the claim is an impermissible attempt to recover for educational malpractice; Plaintiffs fail to identify any contractual promise that was broken; and Plaintiffs' alleged damages are entirely speculative.

Plaintiffs allege that they entered into an "educational contractual relationship" with Defendant, which was formed based upon Defendant's offer of an education leading to a degree in exchange for tuition and fees.  Compl. ¶ 284.  Plaintiffs do not allege that Defendant breached their contracts by failing to provide an education or degree.  Instead, they claim that Defendant committed a breach by misreporting data to USNWR about undergraduate class size, thus representing to the publication that Columbia possessed a characteristic that it did not actually possess.  *Id*. ¶¶ 87–220, 290–91.  Plaintiffs allege that they were "deprived of the benefit of their bargain, equal to what [they] and the Class members would have received, if the representations underlying Columbia's ranking had been true."  *Id*. ¶ 300.

(a)        **Plaintiffs Cannot Recover for Educational Malpractice.**

To the extent that Plaintiffs' claims are premised on the quality of their education, the claims are barred by New York's longstanding prohibition against claims for educational malpractice.  *See*, *e.g.*, *Donohue v Copiague Union Free Sch. Dist.,* 391 N.E.2d 1352, 1355 (N.Y. 1979) (noting courts have "unalteringly eschewed" sitting in review of the implementation of educational policies).  Plaintiffs suggest (albeit vaguely) that they did not receive the benefits of attending a school with Columbia's USNWR ranking, asserting that "grave concerns" have been raised about "the value of a Columbia degree."  Compl. ¶ 296.  The bar on claims for educational malpractice cannot be circumvented by reframing the claim as a breach of contract: "Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to

15

avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) (dismissing breach-of-contract claim).

      **(b)**      **Plaintiffs Fail to Identify a Contractual Promise That Was Breached.**

Aside from this conceptual flaw, the Complaint fails to plead the most basic element of a breach-of-contract claim—a contractual term that was breached. To assert a claim for breach of an educational contract, a student must identify "specifically designated and discrete promises" that were broken. *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 193 (S.D.N.Y. 2021) ("[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."); *Amable v. New Sch.,* 551 F. Supp. 3d 299, 313 (S.D.N.Y. 2021) ("A student's breach of contract action against her university . . . 'must be grounded in a text . . . .'") (citation omitted); *Nungesser*, 169 F. Supp. 3d at 370 (dismissing complaint that failed to identify specific promises); *Gally*, 22 F. Supp. 2d at 206 (noting that terms of implied educational contract "are supplied by the bulletins, circulars, and regulations made available to the student") (citation omitted).

Plaintiffs fail to identify a discrete promise made to them by Defendant. Plaintiffs lump Columbia in with other unnamed universities, asserting in conclusory fashion that "Universities, including Columbia, intentionally use USNWR's rankings as marketing tools to recruit students." Compl. ¶ 40. Yet Plaintiffs fail to cite a specific promise made by Defendant in any particular marketing tool or recruitment effort relating to undergraduate USNWR rankings or data reporting, least of all a promise made to them personally or of which they were aware. Absent a contractual term or representation that Plaintiffs relied upon, the suggestion that they did not receive what they bargained for has no ascertainable meaning. *See Wedgewood Care Ctr., Inc. v. Kravitz*, 154 N.Y.S.3d 312, 317–18 (App. Div. 2021) (noting that essential elements of a contract claim include "damages resulting from that breach"); *Planète Bleue Télévision, Inc.*

*v. A&E Television Networks, LLC*, 2018 WL 10579873, at *15 (S.D.N.Y. Sept. 19, 2018) (Gardephe, J.) (dismissing claims as "speculative and conjectural" where plaintiff identified no lost opportunity or other damage associated with breach).

Moreover, the sole allegation Plaintiffs do make is that Defendant reported an inaccurate data point relating to undergraduate class size to USNWR, which the publication incorporated into its proprietary formula to adduce a ranking. However, such a data point was not a guarantee of future performance and thus cannot constitute a contractual promise. *See Amable,* 551 F. Supp. 3d at 313–14 (holding that school catalog's references to locations and instructional format did not imply a contractual entitlement to continued instruction in the same location and manner). Thus, even if Plaintiffs had been informed of this data point by Defendant, they still would not have a claim for breach of contract.

Finally, Plaintiffs cannot rely upon the implied covenant of good faith and fair dealing to overcome their essential failure to plead a contractual promise. Courts refuse to construe the covenant so as to create or enforce terms that do not exist in an underlying contract. *See, e.g.*, *DSB Holdings, LLC v. Harvard Steel Sales, LLC*, 2021 WL 4944287, at *2 (2d Cir. Oct. 25, 2021) (holding covenant does not obligate defendant to comply with terms beyond scope of underlying contract).

### (c)    Plaintiffs' Damages Claims Are Impermissibly Speculative.

Similar to the GBL claims, the contract claim should be dismissed because Plaintiffs' theory of damages is impermissibly speculative and therefore fatal to their claims. *See supra* pages 9–11. Plaintiffs' theory of damages is based on the difference between the amounts they paid for tuition and the amounts they would have paid to "Defendant or other institutions . . . had the representations underlying Columbia's ranking been true." *Id.* ¶ 262. Teasing out the impact on tuition and fees of data reported to a third-party publication, or determining the amount that a

university is justified in charging based on ranking, reputation, or other variables as compared to other institutions, is the epitome of speculation. *See Pu v. Russell Publ'g Grp., Ltd.*, 2016 WL 9021990, at *6 (S.D.N.Y. Sept. 2, 2016), *aff'd*, 683 F. App'x 96 (2d Cir. 2017) (dismissing contract claims where plaintiff relied "on wholly speculative theories of damages") (internal quotations and citations omitted).

Likewise, Plaintiffs' alleged damages arising from "application fees, transaction fees and interest charges in connection with . . . student loans" are equally uncognizable. Compl. ¶ 302. Although Plaintiffs label these alleged out-of-pocket damages "consequential" damages, they are actually allegations of reliance damages incurred in the performance of a contract. *See Summit Prop.'s Int'l, LLC v. Ladies Prof'l Golf Ass'n*, 2010 WL 4983179, at *3 (S.D.N.Y. Dec. 6, 2010). Reliance damages are intended to "restore plaintiffs to their *status quo ante*," and thus are recoverable only for efforts "rendered useless" as a consequence of the breach. *Id.* at *5–6. Where a non-breaching party continues to receive benefits under the terms of a contract, compensation for reliance expenses "would not restore plaintiffs to their *status quo ante* . . . but would instead constitute a windfall for plaintiffs." *Id.* (citation omitted). Plaintiffs do not allege that they did not receive the opportunity to have their application considered, attend Columbia, or obtain educational degrees. Because they received benefits under the educational contract, awarding reliance damages would constitute a windfall. *See Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992) ("[C]ourts will not knowingly put the plaintiff receiving a reliance recovery in a better position than he would have occupied had the contract been fully performed.") (citation omitted).

For all these reasons, the contract claims are patently deficient and should be dismissed.

### 3.     The Unjust Enrichment Claim Fails.

The unjust enrichment claim fails from the threshold deficiency that it duplicates the other claims.  Plaintiffs allege no facts or theories to distinguish the unjust enrichment claim from their breach-of-contract and GBL claims, which alone requires dismissal.  *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *39 (S.D.N.Y. Nov. 12, 2015) (dismissing claim where plaintiff failed to show how unjust enrichment claim differed from other claims); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 291 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as "merely duplicative of [plaintiffs'] other causes of action"); *Corsello v. Verizon N.Y. Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (dismissing unjust enrichment claim as not cognizable "when it simply duplicates, or replaces, a conventional contract or tort claim"); *see also Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 552 n.7  (S.D.N.Y. 2022) (dismissing unjust enrichment claim as duplicative because it simply restated plaintiff's "core theory" and could not be asserted as a "catchall" or "substitute" for other defective claims).

Furthermore, where a claim is entirely duplicative of a conventional tort or contract claim, unjust enrichment may not be pled in the alternative.  *See Amable,* 551 F. Supp. 3d at 318–19 (dismissing unjust enrichment claim asserted as alternative to implied contract claim against school); *Kamdem-Ouaffo v. Pepsico, Inc.*, 2015 WL 1011816, at *13 (S.D.N.Y. Mar. 9, 2015) (noting that where a plaintiff "fails to challenge the validity of a contract that governs the subject matter at issue, and instead alleges breach of said otherwise enforceable contract, under New York law he or she cannot plead unjust enrichment in the alternative").

Finally, because Plaintiffs' allegations of alleged misrepresentations to USNWR sound in fraud, Rule 9(b)'s heightened pleading standard applies.  *See Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016) (applying Rule 9(b) to an unjust enrichment claim "premised on claims of fraudulent conduct").  Plaintiffs do not come

close to meeting this standard because they fail to identify a specific misrepresentation made by Defendant that they personally were aware of and relied upon.

## C.     THE CLAIMS OF SEVERAL PLAINTIFFS ARE TIME-BARRED.

Even assuming the Complaint stated cognizable claims for relief, all of the claims of Campbell, Student B, and Student D are time-barred, while Student C's GBL claims are time-barred.   Where a statute-of-limitations defense "appears on the face of the complaint," the defense "may be decided on a Rule 12(b)(6) motion."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

Plaintiffs' breach-of-contract and unjust enrichment claims are subject to a six-year statute of limitations, which accrues at the time of breach or wrongful act.   N.Y. C.P.L.R. § 213(2); *V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 260–61 (S.D.N.Y. 2012) (noting breach-of-contract claims accrue upon date of breach, not injury); *Matter of Estate of Reich*, 172 N.Y.S.3d 289, 291 (App. Div. 2022) (noting unjust enrichment claims accrue upon occurrence of wrongful act giving rise to duty of restitution).   Accordingly, any claim accruing before July 12, 2016 is time-barred.

Plaintiffs allege that the contractual breach occurred when Defendant "misreport[ed] data" to USNWR.   Compl. ¶ 290; *see also id*. ¶ 309 (premising unjust enrichment claim on "Defendant's actions and conduct, as described herein").   Plaintiffs assert that they "reasonably relied upon the fact that Defendant would truthfully and accurately submit information and critical data to USNWR," *id*. ¶ 292; that they "would not have applied for admission to Columbia" had they known of allegedly misreported data, *id*. ¶ 294; and that a substantial factor in their decision to enroll was "the prestige associated with Columbia's extremely high ranking." *Id*. ¶ 306.   Plaintiffs' claims thus accrued at the latest when they enrolled at Columbia in theoretical reliance on the accuracy of data reported to USNWR.   As such, Campbell and Student

B's claims accrued no later than 2014, while Student D's claims accrued no later than 2011. Their claims are therefore time-barred.

GBL claims have a three-year statute of limitations that begins to run from the date of injury. *See Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012); *see also Koenig*, 995 F. Supp. 2d at 291 (dismissing with prejudice untimely GBL § 349 claims). Once again, Plaintiffs' alleged injury occurred at the latest when they enrolled at Columbia. Compl. ¶¶ 259–60 (alleging they "would not have applied for admission to Columbia" or "agreed to pay premiums for tuition" had they known of the allegedly inaccurate reporting to USNWR). Claims accruing before July 12, 2019 are therefore time-barred. Because Campbell, Student B, Student C, and Student D each enrolled before 2019, their GBL claims are untimely.

In their response to Defendant's pre-motion letter, Plaintiffs attempt to salvage their claims by invoking the equitable tolling doctrine, citing federal common law. *See* Pls.' Response to Pre-Motion Letter (ECF No. 34), at 5. Under New York law, the doctrine of equitable tolling may be invoked "when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). Not only do Plaintiffs fail to allege any fraud or deception that induced them to delay filing a claim,[5] but there can be no viable argument that Plaintiffs were not on notice of purported misrepresentations about undergraduate class size. Plaintiffs would have identified any supposed shortcoming in their expected class sizes during their attendance at Columbia. *See Gleason v. Spota*, 599 N.Y.S.2d 297, 299 (App. Div. 1993) (noting equitable tolling does not apply "where a plaintiff possesses

---

[5] As noted in one of Plaintiffs' cited cases, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." *St. John's Univ., N. Y. v. Bolton*, 757 F. Supp. 2d 144, 187 (E.D.N.Y. 2010).

timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts . . . .").

## D.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' claims should be dismissed with prejudice.   They filed the Complaint six weeks after Defendant served its motion to dismiss the original complaints filed by Campbell and Student A.   Despite having a preview of Defendant's arguments, Plaintiffs failed to remedy the numerous identified deficiencies when crafting the newest iteration of their complaint.   If Plaintiffs could point to a specific misrepresentation or advertisement to which they were exposed, a contractual promise that was made to them, or a plausible injury, they would have done so by now.   Allowing a third bite at the apple would be futile.   *See, e.g., Cruz v. D.F. Stauffer Biscuit Co., Inc.,* 2022 WL 4592616, at *9 (S.D.N.Y. Sept. 29, 2022) (Gardephe, J.) (denying leave to further amend where plaintiff's amended complaint was still deficient despite "having the benefit of a pre-motion letter from [defendant] stating the grounds on which it would move to dismiss")*; Le Bouteiller v. Bank of N.Y. Mellon,* 2015 WL 5334269, at *11 (S.D.N.Y. 2015) (Gardephe, J.) (denying leave to amend after plaintiff had already filed amended complaint in response to motion to dismiss but failed to remedy deficiencies); *see also Selvam v. Experian Info. Sols., Inc.,* 2015 WL1034891, at *4 (E.D.N.Y. Mar. 10, 2015) ("[T]he complaint gives no indication that Plaintiff has a colorable claim . . . and Plaintiff has already had one opportunity to amend the complaint.").

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant respectfully requests that the Complaint be dismissed in full and with prejudice.

Dated:  February 10, 2023

By: /s/ *Maura K. Monaghan*

Maura K. Monaghan
Kristin D. Kiehn
Aasiya F. Mirza Glover
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Blvd.
New York, NY 10001
Tel: (212) 909-6000
mkmonaghan@debevoise.com
kdkiehn@debevoise.com
afmglover@debevoise.com

*Counsel for The Trustees of Columbia University in the City of New York*

## **CERTIFICATE OF SERVICE**

I, Aasiya F. Mirza Glover, hereby certify that I am above 18 years of age and not a party to this action, and that on February 10, 2023, I served the following papers on Plaintiffs in the above referenced action by email to their attorney Thomas J. McKenna at TJMcKenna@gme-law.com:

- Defendant's Notice of Motion to Dismiss the Putative Class Action Complaint

- Memorandum of Law in Support of Defendant's Motion to Dismiss the Putative Class Action Complaint

- Glover Declaration in Support of Defendant's Motion to Dismiss the Putative Class Action Complaint

- Exhibit A to the Glover Declaration

- Exhibit B to the Glover Declaration

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated:          February 10, 2023

                                            /s/ *Aasiya F. Mirza Glover*
                                            Aasiya F. Mirza Glover