**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: COLUMBIA COLLEGE RANKINGS
ACTION

Case No. 1:22-cv-05945-PGG

(Consolidated with Case
No. 1:22-cv-06567-PGG)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**THE CONSOLIDATED PUTATIVE CLASS ACTION COMPLAINT**

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Fl.
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Lead Counsel For All Plaintiffs And The Putative*
*Class*

March 3, 2023

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................... 2

    A. Columbia Professor Michael Thaddeus Uncovers The False Reported Data ....... 2

    B. Columbia Knowingly Violated The Reporting Standards

    And/Or Concealed Material Facts From Disclosure To USNWR ........................ 3

III.    THE ALLEGATIONS OF THE COMPLAINT .................................................. 5

IV.     LEGAL STANDARDS ....................................................................................... 5

V.      ARGUMENT ....................................................................................................... 6

    A. Plaintiffs Sufficiently Allege Article III Standing ................................................ 6

    B. Plaintiffs Sufficiently Allege A Claim For GBL § 349 And § 350 ...................... 9

        1. The Reasonable Consumer Standard Applies ................................................ 10

        2. Plaintiffs Have Properly Pled Consumer-Oriented Conduct ..................... 10

        3. Materiality is Not an Element of GBL §§ 349 and 350 Claims ................. 11

        4. Plaintiffs Have Properly Pled Injury ........................................................... 13

    C. Plaintiffs Sufficiently Allege A Claim For Breach Of Contract ......................... 14

        1. Plaintiffs' Contract Claim does not Allege Educational Malpractice ......... 15

        2. Plaintiffs Sufficiently Allege a Contractual

        Promise Breached by Defendant ................................................................ 16

        3. Plaintiffs' Sufficiently Allege Damages as a Result of the Breach ........... 18

    D. Plaintiffs Sufficiently Allege A Claim For Unjust Enrichment ......................... 19

    E. Plaintiffs' Claims Are Not Time Barred Under New York Law ......................... 20

    F. The Complaint Should Not Be Dismissed .......................................................... 24

VI.     CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES:**

*Ackerman v. Coca-Cola Co.*,
   2010 U.S. Dist. LEXIS 73156 (S.D.N.Y. July 21, 2010) .................................................. 13, 14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2103) ......................................................................................................... 12

*Ansari v. New York University*,
   1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 12, 1997) ........................................................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 5

*Bailey v. N.Y. Law Sch.*,
   2017 WL 835190 (S.D.N.Y. Mar. 1, 2017) .............................................................. 14

*Basso v. New York Univ.*,
   2017 U.S. Dist. LEXIS 34790 (S.D.N.Y. Feb. 24, 2017)........................................................ 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 5

*Bevelacqua v. Brooklyn Law Sch.*,
   2013 WL 1761504 (N.Y. Sup. Ct. Apr. 22, 2013) ....................................................... 14

*BlackRock Balanced Cap. Portfolio*,
   2018 U.S. Dist. LEXIS 133942 (S.D.N.Y. Aug. 7, 2018) ......................................................... 20

*California v. Texas*,
   141 S. Ct. 2104 (2021) ...................................................................................................... 6

*Chais v. Technical Career Insts.*,
   2002 N.Y. Misc. LEXIS 2086,
   2002 NY Slip Op 30082[U] (Sup. Ct., NY Cty Mar. 1, 2002) .................................................. 11

*Cline v. TouchTunes Music Corp.*,
   211 F. Supp. 3d 628 (S.D.N.Y. 2016) .............................................................................. 10

*Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*,
   238 F. Supp. 3d 375 (E.D.N.Y. 2017) .............................................................................. 23

*Duran v. Henkel of America, Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ............................................................................. 10, 13

*Ebin v. Kangadis Food Inc.*,
  2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 11, 2013) .......................................................13

*Federal Election Commission v. Cruz*,
  142 S. Ct. 1638 (2022) ................................................................................................ 6

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ........................................................................................ 10

*Fiore v. Univ. of Tampa*,
  568 F. Supp. 3d 350 (S.D.N.Y.  Oct. 20, 2021) ........................................................ 18

*Gally v. Columbia Univ.*,
  22 F. Supp. 2d 199 (S.D.N.Y. 1998) ............................................................... 15, 17

*Gleason v. Spota*,
  599 N.Y.S.2d 297 (App. Div. 1993) ........................................................... 24

*Goldberg v. Pace Univ.*,
  535 F. Supp. 3d 180 (S.D.N.Y. 2021) ......................................................... 17

*Gomez-Jimenez v. N.Y. Law Sch.*,
  943 N.Y.S.2d 834 (Sup. Ct. 2012) ............................................................... 14

*Gomez-Jimenez v. N.Y. Law Sch.*,
  103 A.D.3d 13, 956 N.Y.S.2d 54 (1st Dept. 2012) .......................................... 11

*Guilbert v. Gardner*,
  480 F.3d 140 (2d Cir. 2007) ............................................................................ 20

*Habitzreuther v. Cornell Univ.*,
  2015 U.S. Dist. LEXIS 112209 (N.D.N.Y. Aug. 25, 2015) ............................ 14

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
  18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187 (2012) ....................... 20

*Harty v. West Point Realty, Inc.*,
  28 F.4th 435 (2d Cir. 2022) ............................................................................ 6

*Harvey v. Metro. Life Ins. Co.*,
  21 Misc. 3d 1142(A) (N.Y. Sup. Ct. 2005) .............................................. 22

*Harvey v. Metro. Life Ins. Co.*,
  34 A.D.3d 364, 827 N.Y.S.2d 6 (App. Div. 2006) ............................... 22, 23

iii

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020) ...................................................................... 10

*John v. Whole Foods Market Group, Inc.*,
  858 F.3d 732 (2d Cir. 2017) ............................................................................. 6, 7

*Koch v. Acker, Merrall & Condit Co.*,
  967 N.E. 2d 675 (2012) ..................................................................................... 12

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ............................................................................. 24

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ............................................................... 13

*Lightfoot v. Union Carbide Corp.*,
  110 F.3d 898 (2d Cir. 1997) ............................................................................. 19

*Lugan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 6

*Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*,
  784 F.3d 78 (2d Cir. 2015) ............................................................................... 18

*Maloul v. New Columbia Res., Inc.*,
  2017 U.S. Dist. LEXIS 108701 (S.D.N.Y. July 13, 2017) ................................. 21

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) ............................................................................... 10

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir.2007) .............................................................................. 25

*Mihalakis v. Cabrini Med. Ctr.*,
  542 N.Y.S.2d 988 (App. Div. 1989) ................................................................. 14

*New World Sols., Inc. v. NameMedia Inc.*,
  150 F. Supp. 3d 287 (S.D.N.Y. 2015) ................................................................. 9

*New York Univ. v. Cont'l Ins. Co.*,
  87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ........................................................ 11

*Olsson v. Bd. of Higher Educ.*,
  49 N.Y.2d 408, 402 N.E.2d 1150, 426 N.Y.S.2d 248 (N.Y. 1980) ................... 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ................................................................................. 10

*O'Neill v. Standard Homeopathic Co.*,
  346 F. Supp. 3d 511 (S.D.N.Y. 2018) .................................................................................. 12

*Paladino v. Adelphi Univ.*,
  89 A.D.2d 85, 454 N.Y.S.2d 868 (2d Dept. 1982) .............................................................. 15

*Palmeri v. Wilkie Farr & Gallagher LLP*,
  156 A.D.3d 564, 69 N.Y.S.3d 267,
  2017 N.Y. App. Div. LEXIS 9320 (N.Y. App. Div. Dec. 28, 2017) ...................................... 23

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) .................................................................................................. 17

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) .......................................................................................... 10, 14

*Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*,
  2018 U.S. Dist. LEXIS 161269 (S.D.N.Y. Sept. 19, 2018) .................................................. 17

*Ross v. Bank of Am., N.A.*,
  524 F.3d 217 (2d Cir. 2008) .................................................................................................. 6

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) .................................................................................................... 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................................... 6

*Statler v. Dell, Inc.*,
  841 F. Supp. 2d 642 (E.D.N.Y. 2012) .................................................................................. 22

*Summit Props. Int'l, LLC v. LPGA*,
  2010 U.S. Dist. LEXIS 128825 (S.D.N.Y. Dec. 6, 2010) ..................................................... 19

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .............................................................................................. 10

*Wilson v. Nw. Mut. Ins. Co.*,
  625 F.3d 54 (2d Cir. 2010) .................................................................................................. 11

**RULES**:

FRCP Rule 8 ................................................................................................................ 10, 14

FRCP Rule 9 ................................................................................................................ 10, 20

FRCP Rule 12 ................................................................................................................. 5, 18

FRCP Rule 15 .................................................................................................................... 25

N.Y. C.P.L.R. § 213 ........................................................................................................... 20

**OTHER**:

General Business Law § 349 ........................................................................... *passim*

General Business Law § 350 ........................................................................... *passim*

## I.    INTRODUCTION

In this class action against The Board of Trustees of Columbia University in the City of New York ("Defendant"), plaintiffs Ravi Campbell, Student A, Student B, Student C and Student D (collectively, the "Plaintiffs") seek to recover the benefit-of-the-bargain for themselves and the putative class after Defendant ***knowingly*** falsely reported its data to U.S. News and World Report ("USNWR")[1], which data was used to calculate Columbia University's ("Columbia") USNWR ranking.

Every year, high school students and their parents (consumers) await the release of the USNWR university rankings to see which universities have moved up or down on the USNWR rankings list. Consumers of university offerings like Plaintiffs use these rankings in making their application and admission decisions. In 2022, the big news was that Columbia dropped from 2nd to 18th on USNWR ranking of national universities because it ***knowingly falsely reported*** the data it submitted to USNWR, a fact Columbia now admits.

Columbia's top ranking was lucrative, allowing it to substantially increase enrollment. Since Columbia achieved its grossly inflated number 2 ranking on USNWR, its annual enrollment rose from 8,365 in 2013 to 9,739 students in 2022, a 15% increase.

In essence, prospective students, including Plaintiffs and members of the putative class, rely on USNWR's rankings (and the truthfulness of the information submitted by universities as to class sizes, percentage of faculty with terminal degrees, faculty resources, student-faculty ratios, graduation and retention rates, and financial resources, etc.) when deciding whether to apply to and/or attend a specific university.

---

[1]    USNWR is an American media company that publishes news, consumer advice, analysis, and university rankings. ¶ 26. All references to "¶" are to the Consolidated Class Action Complaint (ECF No. 32) (the "Complaint").

II.    **STATEMENT OF FACTS**

A.    **Columbia Professor Michael Thaddeus Uncovers The False Reported Data**

On or about February 28, 2022, Michael Thaddeus, Professor of Mathematics at Columbia, published an exposé demonstrating that Columbia misreported data to USNWR that was used to calculate Columbia's USNWR rankings.  ¶ 44.  Professor Thaddeus made numerous findings, including, but not limited to, the following:

(a)    Columbia reported to USNWR that 82.5% of undergraduate classes enroll fewer than twenty (20) students – a higher percentage than any other school in the top 100 USNWR rankings.  Data from Columbia's Directory of Classes indicated that the correct figure is likely between 62.7% and 66.9%.  *In fact, after Professor Thaddeus published his exposé, Columbia __admitted__ that only 57% of its classes had fewer than twenty (20) students*.

(b)    Columbia reported to USNWR that 100% of its full-time faculty hold a terminal degree (*i.e.*, PhD, MBA, MFA, etc.).  Data from Columbia's College Bulletin indicated that the correct figure is at most 96% and probably lower.  *In fact, after Professor Thaddeus published his exposé, Columbia __admitted__ that only 95% of its faculty held terminal degrees in 2022*;

(c)    Columbia reported to USNWR that 8.9% of undergraduate classes enroll fifty (50) students or more.  Data from Columbia's Directory of Classes indicated that the correct figure is likely between 10.6% and 12.4%;

(d)    Columbia reported to USNWR that 96.5% of its non-medical faculty are full-time. Data submitted to the United States Department of Education indicated that the correct figure is likely 74.1%; and

(e)     Columbia reported to USNWR that it spent some undisclosed amount of money on instruction.  However, Columbia reported to the United States Department of Education that it spends $3.1 billion on instruction.  Data from Columbia's financial statements shows that much of this $3.1 billion represents expenditures on patient care made by Columbia's medical center and, therefore, that the correct figure is much, much lower.  ¶ 45 (Emphasis in Original).

**B.     Columbia Knowingly Violated The Reporting Standards And/Or Concealed Material Facts From Disclosure To USNWR**

Columbia is not the only university that has been caught sending USNWR false and misleading data.  A Temple University business school dean is now serving time in prison for such activity.   ¶ 53; *see also*  https://www.justice.gov/usao-edpa/pr/former-temple-business-school-dean-sentenced-over-one-year-prison-rankings-fraud-scheme.

In order to properly rank a university, USNWR requests that universities follow a procedure called the Common Data Set ("CDS"): definitions and guidelines meant to standardize the reporting of data on class sizes, student-faculty ratios, and a host of other metrics.  It is a worthwhile effort, but compliance is voluntary, and while most universities participate, some refuse -- including, until only very recently, Columbia.   In fact, Columbia refused to participate in the CDS from its inception in 2002 to 2022.  ¶ 25.  This purposeful decision allowed Columbia to more easily manipulate the data it submitted.

USNWR's rankings are calculated using seventeen (17) "measures of quality," including, but not limited to: class size, percent of faculty with a terminal degree in their field, percentage of faculty that is full-time, student-faculty ratio, financial resources per student, and graduation and retention rates.  Normalized scores for each measure are weighted and added together, according to a formula, to arrive at a final overall score. ¶ 29.

3

In 2021-2022, Columbia represented to USNWR that its student/faculty ratio was 6/1 and that 83% of its classes had fewer than twenty (20) students.  ¶ 30; *see also* Exhibit A to the Complaint – Year 2021-2022.  After the publication of Professor Thaddeus' report, Columbia published a CDS ***admitting*** that, in 2022, only 57% of its classes had fewer than twenty (20) students but affirming that its 2021-2022 student/faculty ratio was 6/1.  ¶ 69.

From 2011-2012 to 2021-2022, Columbia annually reported to USNWR that its student/faculty ratio was 6/1 and that at or near 83% of its classes had fewer than twenty (20) students.  In light of the inverse correlation between changes in a university's student/faculty ratio and changes in the percentage of its classes with fewer than twenty (20) students (*see* ¶¶ 65-68), Columbia's 2022 CDS submission plausibly suggests that Columbia's representations to USNWR from 2011-2012 through 2021-2022 were false, and that the percentage of Columbia's classes with fewer than twenty (20) students in those all of years was not at or near 83%, but actually at or near 57%.  ¶¶ 70-71.

Columbia intentionally submitted annual data sets of its university characteristics that it alone prepared.  In order to prepare its annual data sets submitted to USNWR, a multitude of Columbia personnel and departments were involved in gathering the data to be self-reported to USNWR.  These departments and personnel included, among others, the Office of Central Administration, the Office of the Provost, the Vice Provost for Faculty Affairs, the Vice President of Financial Affairs, the Office of the Registrar, the Office of Student Affairs, the Office of Financial Aid, and the Deans of the various Colleges at Columbia.  ¶¶ 31-33.

Universities, including Columbia, intentionally use USNWR's rankings as marketing tools to recruit students.  ¶ 40.

### III.   THE ALLEGATIONS OF THE COMPLAINT

Defendant's motion to dismiss relies on the misinterpretation of Plaintiffs' central allegation.  Defendant failed to address the crux of Plaintiffs' claims, including the following:

> But for Defendant's deceptive reporting of admission data that catapulted it to USNWR number 2nd ranking, Plaintiffs and members of the putative Class would not have enrolled at Columbia and paid its premium tuition and fees (¶ 53), and

> By reason of Defendant's breach of the implied contract, Plaintiffs and members of the putative Class have sustained damages for loss of the benefit of their bargain, and for out-of-pocket damages (¶ 60).

These damages are ascertainable and can be quantified functionally, comparatively, and through the use of experts.  The challenge of calculating damages, when actual damages exist, does not negate the ability to bring a claim.  Plaintiffs bear the ultimate burden of proof, but have sufficiently pled the damages at this stage to overcome a motion to dismiss.

### IV.   LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "[A] well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.*  "[A] plaintiff [need only] plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## V.   ARGUMENT

### A.   Plaintiffs Sufficiently Allege Article III Standing

Plaintiffs alleged, and suffered, a concrete injury as a direct result of Defendant's numerous misrepresentations to USNWR.

The requisite elements of Article III standing are that a plaintiff must show: (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief. *Federal Election Commission v. Cruz*, 142 S. Ct. 1638, 1646 (2022). To determine whether a plaintiff's injury is redressable, a court considers the relationship between the judicial relief requested and the injury suffered. *California v. Texas*, 141 S. Ct. 2104 (2021).

An injury in fact must be particularized and concrete. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016). "Particularized injuries affect the plaintiff in a personal way . . . [and] [c]oncrete injuries are physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). The injury-in-fact requirement is a low threshold. *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008). It is in place to "ensure that the plaintiff has a personal stake in the outcome of the controversy." *John v. Whole Foods Market Group, Inc.,* 858 F.3d 732, 736 (2d Cir. 2017). The Supreme Court has held that "general factual allegations of injury . . . may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lugan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, all of the Plaintiffs have a personal stake in the outcome of this action.

In its motion, Defendant is conflating the issue. The premise of this action is very simple: Defendant misrepresented data to USNWR which resulted in Defendant shooting up the national

rankings and, owing to their higher rank, being able to charge higher tuition.  Therefore, Plaintiffs' injury, as actually pled, resulted from Defendant's misrepresentations to USNWR, beginning in 2011 and each following year, culminating in Defendant charging higher tuition (both undergraduate and graduate rates) than it otherwise would be able to.  This case focuses on concrete tuition increases traceable to Defendant's ascent in USNWR rankings.  ¶¶ 57-221.

For example, *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017) is analogous to this case and the Second Circuit's analysis should control here.  In *John*, a consumer plausibly alleged a nontrivial economic injury sufficient to support standing when, according to a government agency investigation, the defendant grocery store's packages of cheese and cupcakes were systematically and routinely mislabeled and overpriced, and plaintiff regularly purchased said products throughout the relevant time period.  858 F.3d at 737.  The Second Circuit held the complaint did not need to allege an "investigative finding of ubiquitous, systematic over-weighing . . . invariable incidents of this deceptive labeling practice . . . [or] across-the-board overcharging so as to embrace, other than by conjecture, the [products] [plaintiff] occasionally bought."  *Id*. Further, the absence of allegations describing the government agency's methodology was not fatal. *Id.*  Instead, the plaintiff "need only generally allege facts that, accepted as true, make his alleged injury plausible."  *Id.*  Although the plaintiff may eventually be unable to show he was injured under more demanding standards applicable at summary judgment or trial, he also may find evidentiary support needed during targeted discovery.  *Id.*

Here, Defendant attempts to isolate its data reporting errors to only one year which, of course, defies plausibility and reason.  Columbia's Office of Provost issued an admission on September 9, 2022, which stated: "On two of the metrics questioned by our faculty member, class size and faculty with terminal degrees, we determined we had ***previously relied on outdated and/or***

*incorrect methodologies.  **We have changed those methodologies*** for current and future data submissions . . . ."  ¶¶ 49, 11-12.  Plaintiffs are alleging previous misrepresentations based on the language of the Provost as the Provost herself acknowledged Defendant's previous methodologies were either outdated or incorrect.  The plausible inference here is either Defendant misrepresented its data set for only one year, meaning the methodologies used for previous years were correct (or current) and only in 2021 became incorrect (or outdated), or that Defendant has historically been using outdated and incorrect methodologies (either intentionally or negligently) and only admitted such after it was exposed by its own professor in 2022.  ¶ 45.  Defendant's own professor, Thaddeus, observed the following: "It's hard to believe that this was an inadvertent error or a minor matter of methodology.  […]  More likely, someone in the University knew that there was serious misrepresentation afoot."  ¶ 49.  Plaintiffs did not manifest these allegations out of thin air.  Rather, the misrepresentations were unrooted by the Defendant's professor and then eventually confirmed by Defendant itself.

In sum, Defendant systematically and routinely misrepresented data to USNWR [2] and, because of these misrepresentations, Columbia's ranking was boosted to a three-way tie as the nation's second most prestigious ***university*** and its ranking was "frequently touted by the University."  ¶ 51.

At this stage, per the holding in *John*, Plaintiffs do not need to mirror the methodology used by Professor Thaddeus.  It is more than plausible that Defendant's manipulated yearly rankings resulted in inflated tuition costs which, of course, Plaintiffs paid.  As such, all Plaintiffs suffered various economic injuries.  Plaintiffs suffered injuries as consumers under GBL § 349 and § 350 because Defendant misrepresented data in obtaining a higher USNWR ranking, which

---

[2]      ¶¶ 57-221.

was then used to attract prospective students like Plaintiffs who paid premium rates for tuition at such a prestigious university.[3]

### B.     Plaintiffs Sufficiently Allege A Claim For GBL § 349 And § 350

Defendant argues that Plaintiffs' "GBL § 349 and § 350 claims must be dismissed for at least two reasons: "Plaintiffs do not allege that they were exposed to a misrepresentation and their theory of damages is impermissibly speculative." *See* Def's MOL at 12. For the reasons stated below, Defendant is wrong.

To state a claim under Section 349, a plaintiff must allege "(1) the [challenged] act or practice was consumer-oriented[4]; (2) the [challenged] act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (collecting cases). The standard for Sections 349 and 350 is objective; that is, the challenged act or practice must be likely to mislead a reasonable

---

[3]    Defendant argues that "Student A, C, and D lack standing for the additional reason that they attended Columbia as graduate students" and that "Plaintiffs make no attempt to explain how an undergraduate ranking, or allegedly misreported data relating to undergraduate class size, plausibly impacted their decision to enroll as graduate students, let alone how they suffered any injury as a result." *See* Memorandum of Law in Support of Defendant's Motion to Dismiss the Consolidated Putative Class Action Complaint ("Def's MOL") at 11. Defendant's argument misses the mark for the same reasons set forth herein regarding undergraduate Article III standing and the reliance argument. Further, the USNWR rankings in question are "Best National University Rankings," not "Best Undergraduate College Rankings." *See* Exhibit A attached to the Complaint. Moreover, Britannica defines "University" as an "institution of higher education, ***usually comprising a college of liberal arts and sciences and graduate and professional schools and having the authority to confer degrees in various fields of study***. A university differs from a college in that it is usually larger, has a broader curriculum, and offers graduate and professional degrees in addition to undergraduate degrees." *See* https://www.britannica.com/topic/university. (Emphasis added). Lastly, this is a question of fact that should not be decided on a motion to dismiss.

[4]    Defendant does not challenge that the practice was consumer-oriented.

consumer under the circumstances.  *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635

(S.D.N.Y. 2016).  Here, we know that at least five reasonable consumers, the Plaintiffs, were

misled.

"The standard for recovery under [GBL] § 350, while specific to false advertising, is

otherwise identical to Section 349."  *See Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337,

346 (S.D.N.Y. 2020).  Due to this overlap, courts have found that the scope of a GBL § 350 claim

is as broad as that of GBL § 349 claim and that their essential elements are the same.  *Id.*[5]

### 1.  The Reasonable Consumer Standard Applies

New York's GBL §§ 349 and 350 both prohibit deceptive and unfair conduct.  Courts apply

the "reasonable consumer" standard to determine whether a representation is false or deceptive

under the GBL.  *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998).  Under that standard, ***at***

***trial*** Plaintiffs must only show that consumers are likely to be deceived by the representation.  *Fink*

*v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  But dismissal of false advertising claims

is appropriate only in the "rare situation," where "it [is] impossible for the plaintiff to prove that a

reasonable consumer was likely to be deceived."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934,

939 (9th Cir. 2008); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020)

(adopting *Williams*' "rare situation" and "impossible" standards).

### 2.  Plaintiffs Have Properly Pled Consumer-Oriented Conduct

Consumer-oriented conduct consists of "acts or practices [that] have broader impact on

consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85

---

[5]      Claims under GBL §§ 349 and 350 are not subject to the heightened particularity
requirements of FRCP Rule 9(b), but need only meet the bare-bones notice-pleading requirements
of FRCP Rule 8(a).  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.
2005).  Plaintiffs have clearly met these requirements.

N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995).  Moreover, GBL § 349 does not require a repetition or pattern of deceptive behavior, but can include one.  *Id.* (citation and quotation marks omitted). Plaintiffs may satisfy the consumer-oriented conduct requirement by showing that the conduct at issue "potentially affects similarly situated consumers."  *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego*, *supra*, 85 N.Y.2d at 27, 623 N.Y.S.2d at 532-33).

Plaintiffs have properly pled that Defendant, in presenting itself as an institution of higher learning for students to attend in exchange for payment of tuition, is engaged in consumer-oriented conduct.  ¶¶ 241-43, 271, 274.  These GBL §§ 349 and 350 claims are more than a mere private contract dispute that is unique to the parties in this lawsuit.  Defendant's conduct affects the consuming public at large, including, without limitation, prospective students that were considering attending Defendant's university during the times in issue.  *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995); *Chais v. Technical Career Insts.*, 2002 N.Y. Misc. LEXIS 2086, 2002 NY Slip Op 30082[U], at *11-12 (Sup. Ct., NY Cty Mar. 1, 2002); and *Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 956 N.Y.S.2d 54 (1st Dept. 2012).

### 3.  Materiality is Not an Element of GBL §§ 349 and 350 Claims

Defendant contends that Plaintiffs have not plausibly alleged that that the "undergraduate class size was a material consideration to" them nor have Plaintiffs' explained "how this single data point [class sizes] could have been material to them or a reasonable consumer."  Def's MOL at 2, 10.  As an initial matter, Defendant is incorrect that Plaintiffs must allege or prove materiality under GBL §§ 349 and 350.

As a general matter, "materiality" under Sections 349 and 350 is an objective question that does not depend on the mindset of each individual purchaser.  In fact, the Supreme Court has held that materiality "is a question common to all members of the class" when, as here, the materiality

11

of an alleged misrepresentation is judged according to an objective standard.  *Amgen Inc. v. Conn.*
*Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2103) ("The alleged misrepresentations and omissions,
whether material or immaterial, would be so equally for all investors composing the class.").[6]

First, Plaintiffs have alleged that at least five metrics were falsely reported by Columbia.
*See infra* pp. 2-3.  Defendant's attempt to limit the inquiry to its falsehoods about class size alone
re-writes the Complaint.  Moreover, requiring that Plaintiffs establish that (1) Defendant's class
size was a material consideration in their purchasing decision and/or (2) explain class sizes could
have been material to them or a reasonable consumer would improperly apply a reliance element
to Plaintiffs' GBL claims.  Plaintiffs and the Class members had no means of knowing or learning
that Defendant was engaged in ***misreporting data*** (not solely class size) that were used to calculate
its rankings by USNWR.  Instead, Plaintiffs need only establish that a "reasonable consumer"
would be misled or deceived by Defendant's claims regarding its "***ranking***" (not class size only)
to satisfy the "materially misleading" prong of their GBL claims.  *See, e.g.*, *Koch v. Acker, Merrall*
*& Condit Co.*, 967 N.E. 2d 675 (2012) ("To the extent that the Appellate Division order imposed
a reliance requirement on General Business Law §§ 349 and 350, it was error."); *O'Neill v.*
*Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 529 (S.D.N.Y. 2018) ("neither Section 349 nor
350 require proof of reliance").  Thus, "[r]equiring that Plaintiffs establish Defendant's
misreporting of data regarding "class size" as a material factor in their own purchasing decision
would improperly apply a reliance element to Plaintiffs' GBL claims.

---

[6]     Defendant further argues that "[t]he claims of Students A, C, and D are even more
attenuated because, as graduate students, they could not have been injured in relation to data
reported in connection with USNWR's undergraduate ranking or by undergraduate class sizes."
Def's MOL at 2.  *See* Section V(A) and footnote 4 above for response.

4. **Plaintiffs Have Properly Pled Injury**

"An actual injury claim under [s]ection[s] 349 [and 350] typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she [or he] purchased a product and did not receive the full value of her [or his] purchase.'"  *See Duran*, 450 F. Supp. 3d at 350.

Defendant argues that "a price premium theory is entirely inapplicable in the educational context, as it would require a court to wade into abstract determinations about the 'quality' of an education or degree."  Def's MOL at 15.   Plaintiffs' claims do not concern the quality of the education received.  This putative class action concerns Defendant's unfair methods of competition and deceptive acts or practices regarding Columbia's determined effort to rise in the USNWR ***rankings*** by making false and misleading data submissions.  Had Plaintiffs and the putative class known that Defendant's claims regarding their USNWR spot atop the rankings were false or subject to change, Plaintiffs would not have paid a premium for a product based on the allegedly misleading representations.  ¶¶ 247, 260, 263, 295, 307.  These allegations are sufficient to state an injury under GBL §§ 349 and 350 because they "claim that [] [P]laintiff paid a premium for a product based on [Defendant's] inaccurate representations" regarding its USNWR second place ***ranking***.  *See Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156 (S.D.N.Y. July 21, 2010); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding a sufficiently-pled GBL § 349 injury where the plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Ebin v. Kangadis Food Inc.*, 2013 U.S. Dist. LEXIS 174174, at *12 (S.D.N.Y. Dec. 11, 2013) (deeming the plaintiff's allegations sufficient to state a claim under GBL 349 where "[t]he deception is the false and misleading label, and the injury is the purchase price").

Plaintiffs have alleged specific facts in the Complaint that Defendant engaged in false and

misleading practices (Defendant now admits its data provided to USNWR was false) that impacted the entire student body at Columbia. ¶¶ 273, 275, 276, 309.  Further, Defendant's material representations and omissions were advertised to all prospective Columbia students.  ¶ 272. Plaintiffs and other members of the Class were entitled to reasonably expect that the representations regarding Columbia's "ranking" were based on true data supplied by Columbia when they enrolled at Columbia.  ¶¶ 246, 247, 249.  In short, neither the Court nor the jury are required to review any educational decisions as the fact-finding is limited to whether the promises represented by Columbia (the fact that it was the highly ranked university in USNWR) were provided.  As stated above, the allegations for GBL §§ 349 and 350 claims need only meet the barebones notice-pleading requirements of FRCP Rule 8(a) and are not subject to heightened particularity in pleading.  *See Pelman ex rel. Pelman*, 396 F.3d at 511; *Bailey v. N.Y. Law Sch.*, 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017).  Plaintiffs have clearly met this requirement. Accordingly, the first and second claims of the Complaint should not be dismissed.[7]

### C.   Plaintiffs Sufficiently Allege A Claim For Breach Of Contract[8]

A claim for breach of contract must allege facts which show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages."  *Habitzreuther v. Cornell Univ.*, 2015 U.S. Dist. LEXIS 112209, at *14 (N.D.N.Y. Aug. 25, 2015) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust*

---

[7]   Defendant relies on *Bevelacqua v. Brooklyn Law Sch.*, 2013 WL 1761504, at *9 n.13 (N.Y. Sup. Ct. Apr. 22, 2013), *Gomez-Jimenez v. N.Y. Law Sch.*, 943 N.Y.S.2d 834, 849–51 (Sup. Ct. 2012), *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012) and *Mihalakis v. Cabrini Med. Ctr.*, 542 N.Y.S.2d 988, 989–90 (App. Div. 1989) for the proposition that the price premium "theory is not cognizable in the educational context."  Def's MOL at 10-11.  Defendant's argument again misses the mark as Plaintiffs ***are not*** alleging in their Complaint that Plaintiffs' education was lacking but rather whether Plaintiffs paid a premium for a product based on Defendant's inaccurate representations. *See Ackerman*, 2010 U.S. Dist. LEXIS 73156.

[8]   Defendant does not dispute that there is a contract.  Def's MOL at 19.

*Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

### 1. **Plaintiffs' Contract Claim does not Allege Educational Malpractice**

Defendant incorrectly argues that Plaintiffs' breach of contract "claim is an impermissible attempt to recover for educational malpractice[.]" Def's MOL at 15-16. The gravamen of an educational malpractice claim is the allegation that a school failed to provide an effective education. *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998).[9] Thus, an educational malpractice claim is one that "sound[s] in tort and ask[s] the Court to involve itself in the subjective professional judgments of trained educators." *Id.*

Not every action by a student against a school is an educational malpractice claim. Where the breach of contract claim does not ask the court to "evaluate the course of instruction" or allege that "the school breached its agreement by failing to provide an effective education," but instead alleges, for example, a failure to provide other specified services, the action may be properly maintained. *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 454 N.Y.S.2d 868 (2d Dept. 1982).

Such was the case in *Ansari v. New York University*, 1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 12, 1997). In *Ansari*, the court determined that promotional literature and written and oral communications between the defendant and the plaintiff comprised the terms of a contract and were the equivalent of promises that bound the university. *Id.* These materials included promises to provide state-of-the art-facilities, hands-on training, and program activities from 9:00

---

[9] Defendant's citation to *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) is of no moment. Def's MOL at 16. In *Gally*, a disgruntled student alleged that the school "looked the other way" to other students' cheating which "deeply offended and upset" her and that she failed a certain examination (for the third time) because her professor had a "middling command of English and [had] difficulty in framing clear and coherent questions." This action was correctly dismissed, not because it failed to meet some heightened and "demanding" standard for contract formation, but because it failed to meet even the most basic and rudimentary standards for contract formation.

a.m. to 4:00 p.m. every day. *Id.*, at \*3.  The plaintiff alleged that the defendant failed to deliver the hands-on training and facilities promised, while the defendant argued that they delivered substantially what they promised and the deviations plaintiff alleged were insubstantial. *Id.*  The court correctly held that neither the court nor the jury were required to review any educational decisions as the fact-finding was limited to whether the promises represented by the institution were provided. *Id.*  Accordingly, educational malpractice could not apply and the defendant's motion to dismiss was denied. *Id.*

Just as in *Ansari*, Plaintiffs do not allege educational malpractice.  The Complaint does not take issue with the specific ways that individual professors at Columbia elected to teach their classes.  Rather, Plaintiffs allege that they paid a premium to attend Defendant's university that was based partially on Defendant's misrepresentations, as the information Defendant provided to USNWR regarding its class sizes, faculty with terminal degrees, faculty resources, student-faculty ratios, graduation and retention rates, and financial resources (supportive of its high place atop the USNWR rankings) were false and misleading.

While Defendant may dispute these allegations, it is abundantly clear that the Complaint does not allege generalized educational malpractice or require any heightened judicial deference to teaching methods.  These allegations must be taken as true for purposes of the instant motion, and accordingly, dismissal is not warranted.

### 2. Plaintiffs Sufficiently Allege a Contractual Promise Breached by Defendant

Defendant argues that "Plaintiffs fail to identify a discrete promise made to them by Defendant" and "[a]bsent a contractual term or representation that Plaintiffs relied upon, the suggestion that they did not receive what they bargained for has no ascertainable meaning." Def's

MOL at 16.[10]

In New York, the law recognizes the existence of an implied contract between universities and their students. *Gally*, 22 F. Supp. 2d at 206. The terms of that contract are contained in the "bulletins, circulars and regulations made available to the student." *Id.*; *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment . . . ."). The "essence" of this implied contract is that the academic institution "must act in good faith in its dealings with its students," *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 402 N.E.2d 1150, 1153, 426 N.Y.S.2d 248 (N.Y. 1980); *see also Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 193 (S.D.N.Y. 2021) (same), and "[t]he terms of th[is] implied contract are contained in the university's bulletins, circulars[,] and regulations made available to the student," *Papelino*, 633 F.3d at 93 (citation and internal quotation marks omitted).

Here, Defendant provided a "specific promise" to Plaintiffs and putative class members that by enrolling at Columbia, a prospective student is enrolling in a university with a high place ranking atop the USNWR rankings, possessing certain characteristics, qualifications, requirements, benefits, and levels of attainment that it did not to actually possess. ¶ 291.

Defendant systematically and routinely misrepresented data to USNWR and, because of these misrepresentations, Columbia's ranking was boosted to a three-way tie as the nation's second-best school and its ranking was "frequently touted by the University." ¶ 51. Plaintiffs and

---

[10]     Defendant reliance on *Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*, 2018 U.S. Dist. LEXIS 161269 (S.D.N.Y. Sept. 19, 2018) is misplaced. Def's MOL at 16-17. In *Planète Bleue*, unlike here, the contract between the parties provided that "'special damages, lost profits, speculative damages or punitive damages' ***are unavailable*** as a remedy for a breach of the Contract." *Id.*, at *42 (Emphasis added). Moreover, the Court held that "the plaintiff [] identified no ***lost opportunity*** or any other damage associated with this breach." *Id.* (Emphasis added).

the class members reasonably relied upon the fact that Defendant would truthfully and accurately submit information and critical data to USNWR.  Plaintiffs and the Class members had no means of knowing or learning that Defendant was engaged in misreporting data that were used to calculate the rankings of educational institutions to USNWR.   If Plaintiffs and/or the class members had knowledge of Defendant's misreporting of data and deceptive practices described herein, they would not have applied for admission to Columbia.

### 3.   Plaintiffs' Sufficiently Allege Damages as a Result of the Breach

Defendant argues that "[s]imilar to the GBL claims, the contract claim should be dismissed because Plaintiffs' theory of damages is impermissibly speculative and therefore fatal to their claims."  Def's MOL at 17-18.  Not so.

Plaintiffs allege breach of that contract and the resulting benefit of the bargain damages, among other measures available by law.  Had Plaintiffs and the putative class known that Defendant's claims regarding their USNWR high place ranking were false or subject to change, Plaintiffs would not have paid a premium for a product based on the allegedly misleading representations.   ¶¶ 247, 260, 263, 295, 307; *Basso v. New York Univ.*, 2017 U.S. Dist. LEXIS 34790, at *11 (S.D.N.Y. Feb. 24, 2017) ("To the extent that NYU contends Plaintiffs' damages are speculative, these are issues of fact that are not suitable to be resolved at the motion to dismiss stage."); *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract action does not justify dismissal under Rule 12(b)(6)); *Fiore v. Univ. of Tampa*, 568 F. Supp. 3d 350, 373 (S.D.N.Y.  Oct. 20, 2021) (paying a premium to attend in-person classes at UT as opposed to paying a lower price to attend online courses.  Court held that "[t]his is sufficient because, at the pleading stage, 'such allegations are enough to draw reasonable inferences that the alleged breach

18

was not trivial and that damages flowed from the breach.'") (quoting *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1342 (S.D. Fla. 2020).[11]

### D. **Plaintiffs Sufficiently Allege A Claim For Unjust Enrichment**

New York law recognizes quasi-contract claims, including a claim for unjust enrichment. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997) (allowing the court to "infer the existence of an implied contract to prevent one person who has obtained a benefit from another . . . from unjustly enriching himself at the other party's expense" (internal quotation marks and citation omitted; ellipsis in original)).

Here, the Complaint alleges that (1) Defendant was enriched as Plaintiffs and the putative class paid a premium for tuition and other fees to attend Columbia, a USNWR top-ranked educational institution, with class sizes, faculty resources, student-faculty ratios, graduation and retention rates, and financial resources that Columbia represented to be supportive of its USNWR ranking. (¶ 307), (2) at Plaintiffs' expense because they "did not receive the benefit of attending a USNWR top-ranked educational institution, with class sizes, faculty resources, student-faculty ratios, graduation and retention rates, and financial resources supportive of its USNWR ranking" (¶ 308) and (3) Defendant retained the benefits of Plaintiffs' payments because "Defendant was enriched at the expense of Plaintiffs and the Class members by Defendant's wrongful conduct and

---

[11]     Defendant's argument that "Plaintiffs' alleged damages arising from "application fees, transaction fees and interest charges in connection with . . . student loans" are not recoverable because they are "reliance" damages (citing *Summit Props. Int'l, LLC v. LPGA*, 2010 U.S. Dist. LEXIS 128825 (S.D.N.Y. Dec. 6, 2010)), is misplaced.  As part of the price paid to attend Columbia, Plaintiffs paid tuition fees and various other types of fees including application fees, transaction fees and interest charges on loans.  These fees are the totality of the contract price, nothing more.  They are not "reliance" damages.  *Summit* was decided on motions *in limine* just before trial, and after discovery and summary judgment motions, and after plaintiff Summit specified the various category of damages it was seeking, including equitable remedies for restitution and reliance.  Nothing in *Summit* is helpful to resolving the instant motion to dismiss at the pleading stage.

actions, and accordingly, it is against equity and good conscience to permit Defendant to retain such enrichment." (¶ 310).[12]

### E.   Plaintiffs' Claims Are Not Time Barred Under New York Law

Defendant first challenges the contract and unjust enrichment claims as time-barred under the relevant New York statutes of limitations.   In New York, an action to enforce a contractual obligation is subject to a six-year limitations period.  N.Y. C.P.L.R. § 213(2).  To establish that the statute of limitations bars Plaintiffs' claims on a motion to dismiss, Defendant must establish that Plaintiffs' own allegations of fact clearly establish that their claims are untimely.

Under New York law, the limitations period on a claim for breach of contract starts to run when the cause of action accrues.  A cause of action for breach of contract ordinarily accrues and the limitations period starts when a breach occurs. *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007); *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 944 N.Y.S.2d 742, 967 N.E.2d 1187, 1190 (2012) (claim for breach of contract accrues "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court").  Moreover, if "a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Guilbert*, 480 F.3d at 150.  "Under New York law, the continuing breach exception is narrow, restricted to continuing wrongs, not a single wrong that has continuing effects." *BlackRock Balanced Cap. Portfolio (FI)*, 2018 U.S. Dist. LEXIS 133942, at *54-55 (S.D.N.Y. Aug. 7, 2018).  New York contract law distinguishes between "a single wrong that has continuing effects and a series of independent,

---

[12]     Defendant argues that Rule 9(b)'s heightened pleading standard applies to Plaintiff's unjust enrichment claim because "Plaintiffs' allegations of alleged misrepresentations to USNWR sound in fraud.  Def's MOL at 19.  Not so.  Nowhere in Plaintiffs' Complaint is fraud mentioned or alleged.

distinct wrongs," and allows an exception to the typical accrual rules in the latter case. *See Maloul v. New Columbia Res., Inc.*, 2017 U.S. Dist. LEXIS 108701, at *10 (S.D.N.Y. July 13, 2017).

Plaintiffs allege that the contractual breach occurred each year when Defendant "misreport[ed] data" to USNWR. ¶ 290; *see also* ¶ 309 (premising unjust enrichment claim on "Defendant's actions and conduct, as described herein"). Plaintiffs assert that they "reasonably relied upon the fact that Defendant would truthfully and accurately submit information and critical data to USNWR" (¶ 292); that they "would not have applied for admission to Columbia" had they known of allegedly misreported data (¶ 294); and that a substantial factor in their decision to enroll was "the prestige associated with Columbia's extremely high ranking." ¶ 306. Defendant misplaces these allegations as arising when Plaintiffs registered for class, but the reality is that the breach occurred each year Columbia made misrepresentations of their data to USNWR. These misrepresentations were only brought to light by Professor Thaddeus in 2022. This means that the breach occurred every year these rankings were published, given existing students could have opted to leave if they had known the truth, and would place Plaintiffs' claims comfortably within the six (6) year statute of limitation period.

Further, the contract clearly falls under continuing performance as Columbia submitted data to USNWR rankings every year, as is required to continue to be ranked in the USNWR, meaning they were continuously performing these internal data collections and analysis and submitting them to USNWR to obtain a high ranking, which potential students and their parents relied on every year when selecting a higher learning institution and when deciding to remain at Columbia. Each of these reports was distinctly separate from each other and was used to target different groups of incoming new students and different groups of existing students. If, as is plausibly alleged, Columbia used this faulty data collection and reporting methods as admitted for

2022 for prior years, then they would have been continuously and individually breaching the contract with students.   Accordingly, every instance of misreported data causes the statute to run anew, meaning the statute would start running from the most recent breach, again being the reporting year of 2021-22 as stated in the USNWR article un-ranking Columbia University.   For these reasons, Plaintiffs' breach of contract and unjust enrichment claims are not time barred and should be allowed to proceed through the motion to dismiss stage.

Plaintiffs' GBL claims should also be allowed to continue through the motion to dismiss and should not be held to be time barred.   GBL claims have a three-year statute of limitations that begins to run from the *date of injury*.   *See Statler v. Dell*, *Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012).   Defendant again tries to temporally alter Plaintiffs' allegations, arguing that injury occurred at the time they enrolled at Columbia.   However, when Plaintiffs enrolled at Columbia, the rankings were not in question.   The questions of the ranking, and Columbia's falsehoods were not known until Professor Thaddeus published his findings.

Under the "'continuing violation' doctrine . . . a series of continuing wrongs, effectively toll[s] the limitations period until the date of the commission of the last wrongful act." *Harvey v. Metro. Life Ins. Co.*, 21 Misc. 3d 1142(A) (N.Y. Sup. Ct. 2005), *aff'd*, 34 A.D.3d 364, 827 N.Y.S.2d 6 (App. Div. 1st Dept. 2006).   Where a § 349 claim is based on a series of allegedly deceptive acts, however, the "continuing violations doctrine" applies and "effectively toll[s] the limitations period until the date of the commission of the last wrongful act." *Harvey v. Metro. Life Ins. Co.*, 21 Misc. 3d 1142(A), 2005 N.Y. Misc. LEXIS 8422, at *4 (Sup. Ct. Apr. 18, 2005), *aff'd*, 34 A.D.3d 364, 827 N.Y.S.2d 6, 6-7 (App. Div. 2006).

For instance, in *Harvey*, 34 A.D.3d 364, 827 N.Y.S.2d 6, the plaintiff alleged that an insurance company had misleadingly marketed a policy to suggest that the insurance-holder's child

would be covered beyond their 25th birthday when, in fact, the policy did not do so.  *Id.* at 6.  The plaintiff continued to pay premiums after the child's 25th birthday with the understanding that the child was covered by the policy.  *Id.*  Despite the fact that the plaintiff's child had turned 25 years old four years before the plaintiff commenced the NYGBL action, the court concluded that the plaintiff had successfully alleged a "continuing wrong," which is "deemed to have accrued on the date of the last wrongful act", namely billing extra for a child not covered by the insurance.  *Id.* at 6-7 (citation and quotation marks omitted).

Harvey is similar to the facts in this case.  Each year in question (¶¶ 64-220), Defendant submitted false and misleading data to USNWR in order to maintain and increase Columbia's ranking.  Had Defendant submitted **truthful data** to USNWR each consecutive year, Defendant's ranking would not have steadily risen to second place.  If there is a series of continuing violations, "the continuing wrong doctrine tolls the limitation period until the date of the commission of the last wrongful act." *Palmeri v. Wilkie Farr & Gallagher LLP*, 156 A.D.3d 564, 69 N.Y.S.3d 267, 2017 N.Y. App. Div. LEXIS 9320, at *8 (N.Y. App. Div. Dec. 28, 2017) (citations omitted).  "To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'" *Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting *Morgan*, 536 U.S. at 115).[13]

Further, contrary to Defendant's argument, equitable tolling also applies.  Under New York law, the doctrine of equitable tolling may be invoked "when the plaintiff was induced by fraud,

---

[13]     Defendant makes the unremarkable argument that "there can be no viable argument that Plaintiffs were not on notice of purported misrepresentations about ungraduated class size" (Def's MOL at 21) as they were at attendance at Columbia and were on notice of the class size.  Once again, this argument is of no moment as Plaintiffs allege that Defendant misrepresented numerous data metrics, **including (but not limited to) class sizes**, to USNWR which resulted in Defendant shooting up the national rankings and, owing to their higher rank, charging higher tuition.

*__misrepresentations__* or deception to refrain from filing a timely action." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). For equitable tolling to apply, Plaintiffs must plead that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period' and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Intl PLC*, 699 F.3d 141, 157 (2d Cir. 2012).

Here, Plaintiffs clearly allege misrepresentations by numerous Columbia employees in internally gathering and submitting false data to USNWR.  ¶¶ 32-26.  Plaintiffs had no way of discovering that Columbia was misrepresenting its informational metrics to USNWR given Plaintiffs' lack of access to the formal data or process occurring between Columbia's data collectors and USNWR.  It was after the February 28, 2022 analysis by Professor Thaddeus exposing the misrepresentations of Columbia, that Plaintiffs were placed on notice.  Plaintiffs filed suit within six (6) months of this discovery, well within the breach-of-contract and unjust enrichment claims' six-year statute of limitations and the GBL claim's three-year statute of limitations.

Defendant's claim of Plaintiffs' knowledge under *Gleason v. Spota*, 599 N.Y.S.2d 297, 299 (App. Div. 1993) also falls short.  In *Gleason*, the court held that equitable tolling does not apply "where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts."  Here, when Plaintiffs learned of the misrepresentations and Defendant's admissions as to same, they timely sued.

**F.**   **The Complaint Should Not Be Dismissed**

On the chance that the Court deems these allegations are deficient, Plaintiffs should be

allowed leave to amend the Complaint. Under Rule 15(a), "leave to amend 'shall be freely given when justice so requires,' [but] it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007) (quoting Fed. R. Civ. P. 15(a)).

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss or in the alternative grant Plaintiffs leave to file an Amended Complaint.

Dated: March 3, 2023

**GAINEY McKENNA & EGLESTON**

By: /s/ *Thomas J. McKenna*
    Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Fl.
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Lead Counsel For All Plaintiffs And The Putative Class*

**POULIN|WILLEY|ANASTOPOULO LAW FIRM, LLC**
Roy T. Willey IV (admitted *Pro Hac Vice*)
Paul Doolittle (admitted *Pro Hac Vice*)
Blake G. Abbott (admitted *Pro Hac Vice*)
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: roy@akimlawfirm.com
Email: pauld@akimlawfirm.com
Email: blake@akimlawfirm.com

*Counsel for Students A, B, C and D*

## **CERTIFICATE OF SERVICE**

I, Gregory M. Egleston, hereby certify that I am over 18 years of age and not a party to this action, and that on March 3, 2023, I served the following paper on Defendant in the above referenced action by email to its attorney Maura K. Monaghan, Esq. of Debevoise & Plimpton LLP at mkmonaghan@debevoise.com and Kristin D. Kiehn, Esq. of Debevoise & Plimpton LLP at kdkiehn@debevoise.com:

> Plaintiffs' Opposition to Defendant's Motion to Dismiss the Consolidated Putative Class Action Complaint

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2023

> */s/ Gregory M. Egleston*
> Gregory M. Egleston