**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: COLUMBIA COLLEGE RANKINGS ACTION | Case No. 1:22-cv-05945-PGG<br><br>(Consolidated with Case No. 1:22-cv-06567-PGG) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................. 1

SUMMARY OF RELEVANT FACTUAL BACKGROUND ....................................................... 2

   I.   THE LITIGATION ................................................................................................... 2

   II.   THE SETTLEMENT TERMS.................................................................................... 4

ARGUMENT ................................................................................................................... 5

   I.   THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2) ........... 5

     A.   The Preliminary Approval Standard........................................................... 5

     B.   The Settlement Is Procedurally Fair .......................................................... 6

       1.   The Class Has Been Adequately Represented............................................. 6

       2.   The Settlement Is the Product of Arm's Length Negotiations ..................... 8

     C.   The Settlement Is Substantively Fair......................................................... 10

       1.   The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement ......................................................... 11

       2.   The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii) ......................................................................... 17

       3.   The Requested Attorneys' Fees and Other Awards Are Limited to Ensure That the Settlement Class Receives Adequate Relief ................................................... 18

       4.   There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class................................................................................... 19

       5.   The Settlement Treats the Settlement Class Equitably............................... 19

       6.   The Remaining *Grinnell* Factors Also Support Approval of the Settlement ............ 20

         a.   The reaction of the Settlement Class to the Settlement .......................... 20

         b.   The stage of the proceedings.................................................................... 20

         c.   The ability of Defendant to withstand greater judgment ........................ 21

   II.   THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS.... 21

A.    The Settlement Class Meets the Rule 23(a) Requirements ........................................ 22

    1.   Numerosity ................................................................................................ 22

    2.   Commonality ............................................................................................. 22

    3.   Typicality .................................................................................................. 22

    4.   Adequacy .................................................................................................. 23

B.    The Class May Be Certified Under Rule 23(b)(3) ...................................... 23

    1.   Predominance ............................................................................................ 24

    2.   Superiority ................................................................................................. 25

III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND STRATEGIC CLAIMS SERVICES AS SETTLEMENT ADMINISTRATOR AND ESCROW AGENT ............................................................................................... 26

IV.   PROPOSED SCHEDULE OF EVENTS ..................................................................... 27

CONCLUSION ............................................................................................................... 28

APPENDIX A ................................................................................................................. 29

# TABLE OF AUTHORITIES

*Andrews v. Sazerac Co.*,
   2025 U.S. Dist. LEXIS 397 (S.D.N.Y. Jan. 2, 2025) ............................................. 24

*Arredondo v. Univ. of La Verne*,
   341 F.R.D. 47 (C.D. Cal. 2022) .................................................... 16, 23, 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ....................................................... 23

*Balestra v. ATBCOIN LLC*,
   2022 U.S. Dist. LEXIS 57393 (S.D.N.Y. Mar. 29, 2022) ........................... 14

*Belton v. GE Cap. Consumer Lending, Inc.*,
   2022 U.S. Dist. LEXIS 24423 (S.D.N.Y. Feb. 10, 2022) ........................... 10

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ...................................................... 23-24

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................ 11, 12, 17, 20

*Harris v. Amgen Inc.*,
   2017 U.S. Dist. LEXIS 222697 (C.D. Cal. Apr. 4, 2017) ........................... 7

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) .................. 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) .......................... 24

*In re AOL Time Warner, Inc.*,
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ........................... 20

*In re Carrier IQ, Inc., Consumer Priv. Litig.*,
   2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016), *amended in part sub nom. In re
   Carrier IQ, Inc.*, 2016 U.S. Dist. LEXIS 145097 (N.D. Cal. Oct. 19, 2016) ........... 19

*In re Currency Conversion Fee Antitrust Litig.*,
   224 F.R.D. 555 (S.D.N.Y. 2004) ................................................ 25

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ................................................. 8

*In re Currency Conversion Fee Antitrust Litig.*,
   264 F.R.D. 100 (S.D.N.Y. 2010) ................................................. 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........................................................................... 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ........................................................................................... 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................. 21

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................. 15-16, 20

*In re Initial Pub. Offering Sec. Litig.* ("IPO"),
   260 F.R.D. 81 (S.D.N.Y. 2009) .................................................................................... 22

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................... 5

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................. 16

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................... 6, 12, 20

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1977), *aff'd* 117 F. 3d 721 (2d Cir. 1997)................................ 10, 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................. *passim*

*In re Platinum & Palladium Commodities Litig.*,
   2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ................................................. 5

*In re Suffolk Univ. Covid Refund Litig.*,
   2022 U.S. Dist. LEXIS 185297 (D. Mass. Oct. 11, 2022) .............................................. 16

*In re Warner Chilcott Ltd. Secs. Litig.*,
   2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 20, 2008) ............................................... 11

*Jenkins v. Nat'l Grid USA Serv. Co., Inc.*,
   2022 U.S. Dist. LEXIS 115896 (E.D.N.Y. June 24, 2022) ............................................. 18

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ........................................................................................ 23

*Meredith Corp. v. SESAC, LLC,*
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................. 14, 25

*Montera v. Premier Nutrition Corp.,*
   111 F.4th 1018 (9th Cir. 2024) ............................................................................ 15

*Moses v. N.Y. Times Co.,*
   79 F.4th 235, 243 (2d Cir. 2023) ..........................................................................8

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
   339 U.S. 306 (1950) ............................................................................................ 26

*Navarrete v. Milano Mkt. Place, Inc.,*
   2019 U.S. Dist. LEXIS 155166 (S.D.N.Y. Sept. 11, 2019) .................................... 18

*Newman v. Bayer Corp.,*
   348 F.R.D. 567 (S.D.N.Y. 2025) .......................................................................... 23

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) ................................................................................ 12

*Passman v. Peloton Interactive, Inc.,*
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) ..................................................................16

*Reyes v. Summit Health Mgmt., LLC,*
   2024 U.S. Dist. LEXIS 21061 (S.D.N.Y. Feb. 6, 2024) ................................... 6, 8, 18

S*hady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ............................................................................................25

*Sharpe v. A&W Concentrate Co.,*
   2021 U.S. Dist. LEXIS 160177 (E.D.N.Y. Jul. 23, 2021) ...................... 16, 22-23, 24

*Soberal-Perez v. Heckler,*
   717 F.2d 36 (2d Cir. 1983) ................................................................................. 26

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC,*
   2023 U.S. Dist. LEXIS 95908 (S.D.N.Y. June 1, 2023) ................................... 19-20

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................................................ 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) ........................................................................... 5, 6, 26

**RULES & STATUTES**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

General Business Law § 349 ...................................................................... 2, 15, 16, 17

General Business Law § 350........................................................................2, 15, 16, 17

# INTRODUCTION

Plaintiffs Ravi Campbell, Student B, Raphael Silverman, and Bruce Acosta ("Plaintiffs") move under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of a $9,000,000 common fund settlement (the "Settlement") with Defendant Trustees of Columbia University in the City of New York ("Defendant", the "University" or "Columbia").[1] The Settlement provides significant cash benefits to Settlement Class Members who are current and/or former students of Columbia who were allegedly charged a price premium and thus overpaid for Tuition Fees and/or Mandatory Fees (hereinafter, "Tuition") to attend Columbia during the Class Period. It was achieved after extensive, hard-fought litigation and negotiations between the Parties, including two mediation sessions supervised by respected mediator the Honorable Diane Welsh, U.S.M.J. (Ret.) of JAMS (the "Mediator"), together with follow-up negotiations.

As discussed below, the Settlement fully satisfies the requirements for preliminary approval. Accordingly, Plaintiffs respectfully move the Court to enter the order filed herewith ("Preliminary Approval Order") that: (i) preliminarily approves the Settlement; (ii) conditionally certifies the Settlement Class; (iii) appoints Plaintiffs as class representatives; (iv) appoints Class Counsel; (v) appoints Strategic Claims Services as the Settlement Administrator; (vi) approves the proposed Notice Plan (*see* accompanying Declaration of Paul Mulholland) and the proposed Short Form and Long Form Notices (SA, Exs. C, D); (vii) sets a schedule leading to the Court's evaluation of whether to finally approve the Settlement; and (viii) stays all proceedings in the Action except those relating to the Settlement. *See* [Proposed] Preliminary Approval Order.

---

[1]     Unless otherwise defined, capitalized terms have the same meaning as in the Stipulation and Agreement of Class Action Settlement ("Settlement Agreement" or "SA"), attached as Exhibit 1 to Declaration of Thomas J. McKenna (the "McKenna Decl."). Unless otherwise noted, ECF citations are to the docket in this Action and internal citations and quotation marks are omitted.

## SUMMARY OF RELEVANT FACTUAL BACKGROUND[2]

### I.    THE LITIGATION

The Action arises from Defendant's submission of allegedly false data to U.S. News & World Report ("USNWR") in connection with USNWR's *Best National Universities* rankings, and Columbia's direct advertising of the same allegedly false information to prospective and continuing students. McKenna Decl., ¶ 4. Specifically, Plaintiffs allege that Columbia misreported data regarding the percentage of classes with fewer than twenty students, giving Columbia the highest percentage of small class sizes of any university in the United States. *Id.*, ¶ 6. Plaintiffs allege that, as a result, Columbia's USNWR rank was allegedly artificially inflated and, in turn, Columbia was able to, and did, charge higher Tuition than it would have been able to had it not misreported data and been lower ranked. *Id.*, ¶ 8.

On or around February 28, 2022, Michael Thaddeus, Professor of Mathematics at Columbia, published a blog post alleging Columbia misreported data to USNWR. Thereafter, Columbia was downgraded from 2nd place to 18th place in the USNWR rankings. *Id.*, ¶ 9.

On July 12, 2022, Plaintiff Campbell filed the first complaint against Defendant, alleging, among other things, that Defendant charged Plaintiff a price premium in tuition. Plaintiff Campbell asserted claims under NY General Business Law ("GBL") §§ 349 and 350, for breach of contract, and for unjust enrichment. *Id.*, ¶ 11. Following this, former plaintiff Student A filed a second complaint asserting similar claims to Plaintiff Campbell.  Then, on September 8, 2022, following a joint stipulation between Plaintiff Campbell, Student A, and Defendant, Student A's action was consolidated into Plaintiff Campbell's Action, establishing the above-captioned consolidated action (*i.e.*, the "Action").  *Id.*, ¶ 12.  Following consolidation, on November 28, 2022, Plaintiff

---

[2]    A more complete description of the Action is provided in the McKenna Decl. ¶¶ 4-35.

Campbell and Student A filed a Consolidated Class Action Complaint in the Action and, in doing so, added Plaintiff Student B as well as former plaintiffs Students C and D to the Action. *Id.*, ¶ 13.

Thereafter, the Parties briefed a motion to dismiss the then-operative complaint. ECF Nos. 43-47; McKenna Decl., ¶ 15. On March 26, 2024, the Court ruled on Defendant's motion, dismissing Plaintiff Campbell's and former plaintiffs Student A, C, and D's claims, and upholding Plaintiff Student B's GBL claims and giving Plaintiffs Campbell and Student B leave to amend their complaint to re-plead their breach of contract claim. ECF No. 51; McKenna Decl., ¶ 16. Following this, Plaintiffs Campbell and Student B filed a motion for leave to amend their complaint which Defendant opposed. McKenna Decl., ¶ 17. On August 12, 2024, the Court granted Plaintiffs' motion and, subsequently, Plaintiffs Campbell and Student B filed the Second Amended Complaint. *Id.*, ¶ 18.

Concurrently, beginning in May 2024, the Parties commenced formal discovery. Among other things, the Parties served multiple sets of requests for productions, interrogatories, and met and conferred numerous times to discuss the contents and timing of productions. SA, 1.9; McKenna Decl., ¶¶ 19-26, 29, 32-33. Also during this, Plaintiffs hired a statistical expert to develop a damages model to aid with the Parties' forthcoming mediation. McKenna Decl., ¶ 27.

While engaging in discovery, the Parties agreed to participate in an in-person mediation with the Mediator in Philadelphia, PA on January 21, 2025. McKenna Decl., ¶ 29. However, this initial mediation ended without a resolution. *Id.* Soon thereafter, while continuing with discovery,[3] the Parties agreed to a second mediation with the Mediator on February 27, 2025, via Zoom. *Id.*,

---

[3]     While continuing discovery, on February 24, 2025, Plaintiffs Silverman and Acosta joined the Action as Plaintiffs alongside Campbell and Student B and, pursuant to a joint stipulation between the Parties, the Third Amended Consolidated Class Action Complaint was filed in this Action on March 7, 2024. McKenna Decl., ¶ 30.

¶ 32. However, this second mediation also ended without an agreement. *Id.* Nevertheless, in the following weeks, the Parties continued their arm's-length negotiations through the Mediator and, ultimately, reached an agreement in principle to resolve the Action. *Id.*, ¶ 35.

Thereafter, Plaintiffs and Columbia first negotiated a Term Sheet and then the Settlement Agreement. *Id.*, ¶ 36. Plaintiffs now seek preliminary approval of that Settlement Agreement.

## II.    THE SETTLEMENT TERMS

This Settlement provides for a non-reversionary common fund of $9,000,000. SA ¶¶ 2.43, 3.1; McKenna Decl. ¶ 4. The Settlement Fund is intended to compensate Settlement Class Members for the alleged overpayment of Tuition. As the Settlement Class is readily identifiable, this Settlement does not require proof of membership of the Class; instead, *all* Settlement Class Members who submit a simple Claim Form will receive an equal share of the Net Settlement Fund, with Plaintiffs also receiving service awards. SA ¶¶ 3.2, 7.1, 7.2; McKenna Decl. ¶¶ 43-45. The Parties agree to the certification of the following Settlement Class:

> All undergraduate students enrolled in any of the Columbia College, Columbia Engineering, or General Studies programs who paid Tuition Fees and/or Mandatory Fees to Columbia University for the Fall 2016 through Spring 2022 semesters (the "Class Period").[4]

*See* SA ¶ 2.44; McKenna Decl., ¶ 40.

Settlement Class Members will be asked to fill out a simple Claim Form to confirm their contact information and indicate their preferred method to receive their Settlement Payment. SA ¶ 7.3; McKenna Decl. ¶ 43. Any undistributed funds from the Net Settlement Fund that remain in

---

[4]    Specifically excluded from the Class are: (i) students who did not pay any Tuition Fees or Mandatory Fees during the Class Period, *e.g.*, who received a full-ride scholarship; (ii) Columbia, any Person in which Columbia has a controlling interest, and Columbia's officers, directors, trustees, legal representatives, successors, subsidiaries, and assigns; (iii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iv) any individual that timely and validly opts out of the Settlement.

the Settlement Fund Account after the initial distribution period is completed will be reallocated to Settlement Class Members who accepted their Settlement Payment so long as it is economically feasible in the opinion of Class Counsel. SA ¶ 7.4.3; McKenna Decl. ¶ 44. Any funds that cannot be reallocated will be distributed as a *cy pres* award to a public interest organization with a mission germane to the subject matter of this lawsuit as agreed upon by the Parties and approved by the Court, as necessary. SA ¶ 7.4.4.

## ARGUMENT

## I.    THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

### A.  The Preliminary Approval Standard

The Court may preliminarily approve and direct notice of the Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies Rule 23(e)(2) and the proposed Settlement Class may be certified. Fed. R. Civ. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing the Rule 23(e)(2) standards at preliminary approval). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("*Wal-Mart*").

In evaluating a proposed settlement, the court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, 2014 U.S. Dist. LEXIS 96457, at *36 (S.D.N.Y. July 15, 2014). A "court's primary concern is with the substantive terms of the settlement; accordingly, the court must compare the terms of the compromise with the likely rewards of litigation." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007). The Settlement negotiated here is fair and adequate; recommended by experienced counsel following arm's length negotiations (including the mediations), informed by a thorough

investigation that involved, *inter alia*, party and non-party discovery. *See Reyes v. Summit Health Mgmt., LLC*, 2024 U.S. Dist. LEXIS 21061, at *7 (S.D.N.Y. Feb. 6, 2024) ("The existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis."). Further, the Settlement provides a significant benefit for the Settlement Class in the face of substantial costs and risks associated with continued litigation. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

## B. The Settlement Is Procedurally Fair

To assess procedural fairness, Rule 23(e)(2) requires the Court to find that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). Where a settlement is the product of "arm's length negotiations" following "extensive pre-negotiation discovery … and then … months of discovery" conducted by "experienced counsel," it "counsels in favor of approving the settlement." *Reyes*, 2024 U.S. Dist. LEXIS 21061, at *7-8.

### 1. The Class Has Been Adequately Represented

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[5] requires that the "interests … served by the Settlement [are] compatible with" those of settlement class members. *Wal-Mart*, 396 F.3d at 110. This is met when the class representatives' interests are not antagonistic to those

---

[5]    Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under Fed. R. Civ. P. 23(a)(4). *See Payment Card*, 330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context. The Court looks to Rule 23(a)(4) case law to guide its assessment of this factor.").

of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010) ("*Currency Conversion III*"); *Wal-Mart*, 396 F.3d at 106-07 (adequate representation is established "by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

Plaintiffs' interests are aligned with those of the Settlement Class as Plaintiffs are each current or former undergraduate students at Columbia University during the Class Period. Accordingly, Plaintiffs were each charged Tuition like the Settlement Class during the same period, which was alleged to have been artificially inflated. As a result, Plaintiffs and the Class seek the same relief from the same injury. *See Wal-Mart*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class they seek to represent). All Settlement Class Members, including Plaintiffs, share interests in obtaining a monetary recovery from Defendant.

Courts evaluating adequacy of representation also consider the adequacy of plaintiffs' counsel. *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."); Fed. R. Civ. P. 23(g).  Gainey McKenna & Egleston ("GM&E" or "Class Counsel") has led the prosecution of the Action from its inception.[6] McKenna Decl. ¶ 3.  Class Counsel, "[GM&E,] have extensive experience in class action litigation … and have litigated a number of noteworthy … class actions," including university tuition refund class actions. *Harris v. Amgen Inc.*, 2017 U.S. Dist. LEXIS 222697, at *14 (C.D. Cal. Apr. 4, 2017); *Id.* ¶ 37. Class Counsel's extensive class action experience is strong evidence that the

---

[6]    Poulin Willey & Anastopolou LLP also represented former plaintiff Student A and assisted Plaintiffs and Class Counsel.

Settlement is procedurally fair. *See* McKenna Decl., ¶ 37, Ex. 2; *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("*Currency Conversion II*") (noting the "extensive" experience of counsel in granting final approval of settlement). The expertise of Class Counsel was important in prosecuting the Action and achieving this fair, reasonable and adequate settlement.

Class Counsel were also well informed about the strengths and weaknesses of the claims against Columbia in advance of negotiating the Settlement. McKenna Decl. ¶ 37. Before and during negotiations with Columbia, Class Counsel reviewed and considered, *inter alia*, documents and data produced during discovery, including by third-party USNWR, as well as other information developed during their legal and factual investigations, including the damage calculations and guidance of Plaintiffs' expert. *Id.* Class Counsel's investigation of the facts underlying the claims and their preparation in prosecuting this litigation reinforces the adequacy of counsel and their representation.

### 2.    The Settlement Is the Product of Arm's Length Negotiations

As this Court has recognized, "[p]reviously, settlements negotiated at arm's length enjoyed a presumption of fairness. However, the Second Circuit has since clarified that Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length." *Reyes*, 2024 U.S. Dist. LEXIS 21061, at *7, n.3 (quoting *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)). Despite this, "Rule 23(e)(2)(b) requires a court to consider whether the proposed settlement was negotiated at arm's length" as one factor, and "[t]he existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis." *Id.*, at *7.

Here, knowledgeable and competent counsel for Plaintiffs and Columbia, each with a deep understanding of the Action's risks and the Settlement's benefits, negotiated the Settlement,

extensively assisted by the Mediator. *See* McKenna Decl. ¶¶ 28, 32, 35-36. Class Counsel has substantial experience litigating complex class action cases, including those involving universities and the repayment of tuition and fees. McKenna Decl. ¶ 37, Ex. 2. Columbia, for its part, is represented by skilled counsel from a premier defense firm, Debevoise & Plimpton LLP, an internationally recognized law firm with extensive experience defending class action litigation. *Id*.

The path to settlement negotiations between Plaintiffs and Columbia initially began in April 2024 when the Parties, with the encouragement of the Court, explored whether a settlement could be possible and agreed to consider mediation, subject to Columbia producing certain categories of documents on a priority basis. *Id.*, ¶ 19. Following this agreement, Columbia started to produce documents to Plaintiffs and the Parties negotiated the logistics of a mediation. *Id.*, ¶¶ 24, 28. In October 2024, the Parties requested an extension of certain discovery deadlines to enable the Parties to focus on exchanging discovery targeted specifically for mediation. *Id.*, ¶ 28. Thereafter, the Parties agreed to an in-person mediation with the Mediator in Philadelphia on January 21, 2025. *Id.*, ¶ 29. Prior to the mediation, the Parties submitted detailed mediation statements detailing their respective positions. Then, the Parties participated in the in-person arm's-length mediation, however, they ended the mediation without reaching an agreement. *Id.*, ¶ 29. Accordingly, the Parties continued to litigate. *Id.*

After engaging in further discovery and investigation, the Parties agreed to attend a second mediation with the Mediator on February 27, 2025. *Id.*, ¶ 32. The Parties prepared supplemental mediation statements for the Mediator, which focused on certain issues that had arisen from continued discovery. *Id.* While this second mediation also ended without an agreement, the Parties continued to engage in hard-fought negotiations over the ensuing weeks under the Mediator's supervision before reaching an agreement in principle. *Id.*, ¶¶ 32, 35.

Plaintiffs' claims have substantial merit, but Class Counsel acknowledge the expense and uncertainty of continued litigation against Columbia, which maintains that it has meritorious defenses on the merits and on damages and believes it would prevail if litigation continued. In recommending this Settlement, Class Counsel have accounted for the uncertain outcome and risks of further litigation (as further discussed below) and believe the Settlement confers significant benefits on Plaintiffs and the Settlement Class. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("*PaineWebber*") (observing that "great weight" is given to the advice of experienced counsel). Further, a neutral mediator facilitated the Settlement, which provides an additional indication of the settlement's procedural fairness. *Belton v. GE Cap. Consumer Lending, Inc.*, 2022 U.S. Dist. LEXIS 24423, at *10 (S.D.N.Y. Feb. 10, 2022) (negotiations that "included a mediation session with an experienced and highly regarded mediator … were thorough and hard fought, and free from any undue pressure or collusion").

Given Class Counsel's considerable prior experience in complex class action litigation, their knowledge of the strengths and weaknesses of Plaintiffs' claims asserted in this Action, their assessment of the Settlement Class's likelihood of recovery following trial and appeal, and their experience negotiating and litigating with Columbia, the Settlement is clearly the result of good faith arm's-length negotiations and is fair and reasonable.

### C.    The Settlement Is Substantively Fair

If approved, this Settlement will provide a significant monetary benefit for the Settlement Class in the form of a $9,000,000 non-reversionary Settlement Fund. SA ¶¶ 2.43, 3.1. As this is the only pending case concerning Columbia's alleged misreporting of data and alleged overpayment of Tuition, this Settlement is the only means of direct recovery for Settlement Class Members.

To assess substantive fairness, courts consider whether "the relief provided for the class is adequate," accounting for: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The courts also consider whether a settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Second Circuit courts additionally apply the following factors provided in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

These *Grinnell* factors overlap with Rule 23(e)(2)(C)-(D). *See Payment Card*, 330 F.R.D. at 29. As demonstrated below, the Rule 23(e)(2)(C)-(D) and *Grinnell* factors both support preliminary approval of the Settlement.[7]

### 1. The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement

To determine whether a settlement provides adequate relief to the class, the Court must evaluate "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), "to forecast the likely range of possible class wide recoveries and the likelihood of success in obtaining such

---

[7]    For preliminary approval, the appropriate considerations are *Grinnell* Factors 1, 4-6 and 8-9, addressed below. *See In re Warner Chilcott Ltd. Secs. Litig.*, 2008 U.S. Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 20, 2008)

results." *Payment Card*, 330 F.R.D. at 36. Satisfying this factor necessarily "implicates several *Grinnell* factors, including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id*. Relatedly, to assess whether the recovery is within the range of reasonableness, courts weigh the settlement relief against the strength of the plaintiffs' case, including the likelihood of a recovery at trial. *See Grinnell*, 495 F.2d at 463. This approach "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion…." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). As a result, "[d]ollar amounts [in class settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).

The consideration that the Settlement provides falls well within the range of what the Court may consider reasonable at final approval. *NASDAQ II*, 176 F.R.D. at 102. As this Court noted during the October 24, 2024 case management conference, the legal and factual issues in this Action presented "significant litigation obstacles" and would be "a very expensive case to litigate." ECF No. 86, 3:13-14; 5:19. Indeed, this case involves highly contested complex issues involving Columbia's collection and submission of data to USNWR, the decision to increase Tuition, and quantifying the value of a university's UNSWR rank. Establishing liability would therefore involve obtaining and proving the meaning and significance of evidence from Columbia and relevant third parties,[8] deposition testimony, expert analysis, and other facts collected in discovery.

---

[8]      Prior to settlement, Plaintiffs noticed a Rule 30(b)(6) deposition, seven (7) individual depositions, and served a deposition subpoena on third party USNWR; each of which Plaintiffs would likely have pursued absent settlement. Continued litigation would also have had Plaintiffs

As is always true in cases involving large document productions such as this one, the duration of the case would depend on the time Defendant required to produce documents, and the time the Parties required to review productions. Defendant produced over 17,000 pages of documents at the time the Settlement was reached, and it was expected that, based on the prior negotiations with Defendant's Counsel as to the scope of discovery, Defendant would produce an additional tens of thousands of documents had litigation continued. SA, ¶ 1.13.

Columbia also conducted its own discovery and investigation. Had discovery continued, Defendant indicated that it would have taken the deposition of Plaintiffs and Plaintiffs' expert (*see* ECF No. 103, 3:21-22) and would likely have served additional discovery demands and subpoenas. Using the evidence collected through its discovery efforts, Columbia likely would have argued, among other things, that its class size data did not significantly impact its USNWR ranking, that its USNWR ranking did not impact its Tuition, that Plaintiffs did not rely on the USNWR rank or Columbia's class size representations in enrolling at Columbia, and that Plaintiffs did not suffer any harm.

Had this case continued, the Parties would have "embark[ed] on a very expensive exercise in discovery" "where expenses [were] going to mount for both sides." ECF No. 86, 5:22-23; ECF No. 103, 3:7-8. That is because, in addition to the voluminous factual discovery, the Parties required statistical experts to opine on the value of an increased USNWR rank, the impact of an increased rank on a university's tuition, and the monetary value of small class sizes. Further, higher education experts may have been required to provide an insight into, *inter alia*, a university's

---

serve further subpoenas on relevant individuals and third parties identified during their investigation, as well as serving a further subpoena on USNWR which may have led to additional ancillary litigation as USNWR would likely oppose any subpoena on, *inter alia*, news-related privilege grounds.

decision to adjust its tuition fees and how universities use the USNWR ranking. Had this case progressed, the Parties' experts would have added to the cost and duration of the case and likely would have triggered a "battle of the experts."[9]  Expert discovery would likely have led to *Daubert* motion practice by both sides, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this litigation and the need to quantify the value of the USNWR rankings and Columbia's class size representations, this case presents a significant level of risk and uncertainty. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("greater the complexity, expense, and likely duration of the litigation, … the stronger the basis for approving the settlement.").

Underscoring that discovery would have been expensive and highly contested is that the Parties had a discovery dispute pending at the time of settlement. Part of this dispute related to the Court's application of the continuing violation doctrine and the period of the alleged harm. While Plaintiffs believe their interpretation of the continuing violation doctrine would have prevailed, there was a risk that, had the Court ruled in favor of Defendant, the applicable class period could have been significantly shortened, meaning the number of individuals that would enjoy the benefits of any recovery would be limited. Accordingly, the Settlement here, which includes Class Members spanning six (6) academic years, is an excellent result.

While Plaintiffs believe they would have prevailed after completing discovery, especially because they prevailed on a motion to dismiss and motion to amend (*see* ECF Nos. 51, 74), the risks were still significant. Not only did Plaintiffs face significant risks in proving damages—

---

[9]      *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation"); *Balestra v. ATBCOIN LLC*, 2022 U.S. Dist. LEXIS 57393, at *8 (S.D.N.Y. Mar. 29, 2022) (granting preliminary approval of class settlement and finding the settlement amount within the range of approval considering the risks, including a costly and confusing "battle of the experts").

something that this Court repeatedly warned would be particularly difficult—and quantifying the value of Columbia's representations and USNWR rank, but Plaintiffs also faced risks with respect to their GBL claims and the application of statutory damages. Indeed, the GBL's statutory damages have not been assessed on a class-wide basis in New York. Thus, even if liability is proven, there are a number of open issues as to whether the statutory damages are available so long as Plaintiffs could prove *any* damage, or if the damage need be significant, and if the statutory damages are available per violation (*i.e.*, for each occasion a Class Member made a payment) or per person. On this latter point, Defendant would likely argue that the Class would be estopped from claiming the class size representations were false and misleading after their first year because they would have experienced Columbia's class sizes. Moreover, Plaintiffs believe this issue has only been considered once in the class action context, by Ninth Circuit courts interpreting New York state law. *See Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1041 (9th Cir. 2024) (affirming that "statutory damages under [GBL] §§349 and 350 should be calculated on a per-violation basis" in an action involving a dietary supplement.). But even if this Court found the same to be true, there is a risk that this Court would reduce the statutory damages award to avoid it being "grossly punitive" or "disproportionate to the legislative goals" of the GBL, as the District Court did in *Montera*, 2025 U.S. Dist. LEXIS 43184, at *21 (N.D. Cal. Mar. 10, 2025) (awarding GBL § 349 damages instead of the combined §§ 349 and 350 damages).

The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. Though present in every class action, this risk is significant where defendants are likely to challenge class certification, including by petitioning for an interlocutory appeal under Rule 23(f). *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely

that defendants would oppose class certification if the case were to be litigated"). Certifying a litigation class may raise complex legal and factual issues given Plaintiffs' price premium theory of damages, which Defendant asserted could not be assessed on a class-wide basis. *See* ECF No. 103, 4:25-5:2. The uncertainty is only enhanced by conflicting case law. *See Sharpe v. A&W Concentrate Co.*, 2021 U.S. Dist. LEXIS 160177, at *9-11 (E.D.N.Y. Jul. 23, 2021) (certifying GBL price premium class); *but see Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 468 (S.D.N.Y. 2023) (denying certification of GBL price premium class). Class certification in the university tuition refund context is also uncertain with such actions having been certified and also denied certification. *Compare Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 55 (C.D. Cal. 2022) (granting class certification); *with In re Suffolk Univ. Covid Refund Litig.*, 2022 U.S. Dist. LEXIS 185297, at *12 (D. Mass. Oct. 11, 2022) (denying class certification). While Plaintiffs are confident the Court would certify a class, such a motion would be vigorously opposed by Columbia. *See* ECF No. 103, 4:16-5:3.

In light of these risks, this $9,000,000 Settlement represents an excellent recovery for the Class and a reasonable hedge against the risks of continuing to pursue the claims against Columbia. *PaineWebber*, 171 F.R.D. at 125 ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). The proposed Settlement provides "the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010).  It exchanges extensive prosecution costs and a lengthy litigation timeline with a real recovery. While the class-wide damages could be substantial if Plaintiffs successfully proved their GBL claims after trial and appeal, achieving that level of recovery would be a significant challenge, given the facts of

this case, significant risks associated with certifying a litigation class, and the uncertainty around applying the GBL and in proving a price premium.

This Settlement will provide Class Members a gross recovery of approximately $409.09 (74.38% of the maximum combined statutory damages under GBL §§ 349 and 350), well within, or above, the range of what may later be found to be fair, reasonable, and adequate at final approval. *See In re Columbia Univ. Tuition Refund Action*, No. 20-cv-03208 (JMF) (S.D.N.Y. 2022) ($446.43 per student); *Flatscher v. The Manhattan School Of Music*, Case No.: 20-cv-4496 (S.D.N.Y. 2023) ($444.44 per student); *Metzner v. Quinnipiac Univ.*, No. 3:20-cv-00784-KAD (D. Conn. 2023) ($271.68 per student); *Smith v. Univ. of Pennsylvania*, 2023 U.S. Dist. LEXIS 9094 (E.D. Pa. 2023) ($183.67 per student); *Espejo, et al. v. Cornell University*, Case No. 3:20-cv-00467-MAD-MIL (N.D.N.Y. 2023) ($125 per student); *Pfeifer, et al. v. Loyola University of Chicago*, Case 20-cv-03116 (N.D. Ill. 2024) ($84 per student); *see also Grinnell*, 495 F.2d at 455 (a "satisfactory settlement" could be "a thousandth part of a single percent of the potential recovery."); *In re PaineWebber Litig.*, 171 F.R.D. at 130 (fairness determination turns not on a "mathematical equation yielding a particularized sum … but rather … [on] the strengths and weaknesses of the plaintiff's case").

### 2. The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii)

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *Payment Card*, 330 F.R.D. at 40. In addition, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*.

The Settlement Fund will be distributed first by subtracting any Court-approved disbursements, including: (i) Taxes; (ii) Administration and Notice Costs; (iii) Attorneys' Fees and

Expenses awarded by the Court; and (iv) any Service Award approved by the Court. SA ¶¶ 3.2. After that, Settlement Payments will be distributed to Authorized Claimants from the Net Settlement Fund on an equal basis. *Id.* ¶¶ 7.1, 7.2[10] Allocating class action settlement proceeds on an equal basis has been approved as a fair, reasonable, and adequate method of allocating settlement funds by this Court and other courts, particularly those involving tuition refunds. *See, e.g.*, *Qureshi v. American University*, 1:20-cv-01141-CRC (D.D.C. 2024), ECF No. 98 at 3-4; *Shaffer v. George Wash. Univ.*, 1:20-cv-01145-RJL (D.D.C. 2024), ECF No. 78 at 4; *Metzner v. Quinnipiac Univ.*, No. 3:20-cv-00784-KAD (D. Conn. 2023), ECF No. 130 at 4-6; *see also In re Payment Card*, 330 F.R.D. at 47 (on preliminary approval, finding that a "*pro rata* distribution scheme is sufficiently equitable"); *Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, 2022 U.S. Dist. LEXIS 115896, at *10 (E.D.N.Y. June 24, 2022) (approving a *pro rata* distribution of the settlement proceeds after reduction of the Settlement Costs); *Reyes*, 2024 U.S. Dist. LEXIS 21061, at *14 (approving the "*pro rata* distribution scheme" as equitable where the "[d]istribution of funds will thus be automatic, with no need for additional effort on the part of Class members."). The Court should approve the Distribution Plan for use in allocating proceeds from this Settlement.

### 3. The Requested Attorneys' Fees and Other Awards Are Limited to Ensure That the Settlement Class Receives Adequate Relief

Class Counsel will seek no more than one-third of the Settlement Fund in attorneys' fees, which may be paid from the Settlement Fund following the Effective Date. SA ¶¶ 17.1, 17.2. The proposed attorneys' fee "is reasonable and consistent with fees upheld by courts in this District" (*Navarrete v. Milano Mkt. Place, Inc.*, 2019 U.S. Dist. LEXIS 155166, at *6 (S.D.N.Y. Sept. 11, 2019)), especially in the college tuition refund context. *See, e.g.*, *In re Columbia University Tuition*

---

[10]    The final amount per Authorized Claimant will be determined after the permitted disbursements are paid and the Settlement Administrator has processed Claim Forms.

*Refund Action*, Case No. 20-cv-03208-JMF, ECF No. 115 at ¶ 10 (S.D.N.Y. Mar. 29, 2022) (awarding fees of one-third the settlement fund); *Flatscher v. The Manhattan School of Music*, 20-cv- 4496 (KPF) (SDA) (S.D.N.Y. 2023) (same); *D'Amario v. Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y. Oct. 18, 2022) (same). Class Counsel will also seek their reasonably incurred litigation expenses in an amount not to exceed $75,000. SA ¶ 17.1; McKenna Decl. ¶ 44. Finally, Plaintiffs will also seek Service Awards totaling no more than $25,000 each. SA ¶ 16.1; McKenna Decl. ¶ 44. Class Counsel will separately file their Fee and Expense Application seeking approval of the requested awards.

### 4.  There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class

Rule 23(e)(3) requires "[t]he parties seeking approval [to] file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement identifies the *In Camera* Supplement, which provides Columbia with a qualified right to terminate the Settlement Agreement under certain conditions before final approval. SA ¶ 6.2. This type of agreement is standard in complex class action settlements and does not impact the fairness of the Settlement.[11]

### 5.  The Settlement Treats the Settlement Class Equitably

The Settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Distribution Plan provides for an equal distribution of the Net Settlement Fund, a method this Court has already found equitable in other cases. *See Payment Card*, 330 F.R.D. at 47; *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 2023 U.S. Dist. LEXIS 95908, at

---

[11]    *See, e.g.*, *In re Carrier IQ, Inc., Consumer Priv. Litig.*, 2016 U.S. Dist. LEXIS 114235, at *32 (N.D. Cal. Aug. 25, 2016), *amended in part sub nom. In re Carrier IQ, Inc.*, 2016 U.S. Dist. LEXIS 145097 (N.D. Cal. Oct. 19, 2016) (observing that such "deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest").

*10-11 (S.D.N.Y. June 1, 2023) (finding that "the *pro rata* distribution of the Settlement Fund …
[is] sufficient to show that the Settlement Class is treated equitably."). The Settlement does not
favor or disfavor Plaintiffs or any Class Member; nor does it discriminate against, create any
limitations, or exclude any persons or groups within the Class. *See NASDAQ II*, 176 F.R.D. at 102.
All Class Members would release Columbia with respect to claims based on the same factual
predicate of this Action. SA ¶ 12.1. The proposed Class Notice provides information on how to
opt out of the Settlement; absent opting out, each Class Member will be bound by the release. SA
¶ 14.6.

### 6.  The Remaining *Grinnell* Factors Also Support Approval of the Settlement

#### a.  The reaction of the Settlement Class to the Settlement

Consideration of this *Grinnell* factor is premature prior to Class Notice and will be
addressed in later pleadings. *See GSE Bonds*, 414 F. Supp. 3d at 699 n.1. However, Plaintiffs,
whose interests are aligned with the Settlement Class, support the Settlement.

#### b.  The stage of the proceedings

This factor considers "whether the plaintiffs have obtained a sufficient understanding of
the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."
*In re AOL Time Warner, Inc*., 2006 U.S. Dist. LEXIS 17588, at *37 (S.D.N.Y. Apr. 6, 2006).  This
factor does not require extensive discovery, or indeed any discovery at all, "as long as '[counsel]
have engaged in sufficient investigation … to enable the Court to 'intelligently make … an
appraisal' of the settlement.'" *Id.*, at *10.  Since July 2022, Class Counsel have conducted
extensive research and discovery to assess the merits of Plaintiffs' claims. McKenna Decl. ¶ 36.
Class Counsel have reviewed, *inter alia*, documents produced by Columbia and USNWR in
response to document demands and subpoenas, interrogatory responses, requests to Plaintiffs'
deficiency letter, and a damages model developed by Plaintiffs' expert for this litigation. *See id.*

¶¶ 19-34. The substantial information and discovery gathered allowed Class Counsel to be well informed about the strengths and weaknesses of the claims and the advantages of the Settlement, and to recommend the Settlement to Plaintiffs. Accordingly, Class Counsel's well-informed views of the strength of claims and likely defenses weigh in favor of preliminary approval.

### c.  The ability of Defendant to withstand greater judgment

Even if Columbia could withstand a judgment greater than the Settlement Amount, this factor alone does not affect the Settlement's reasonableness. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2019) (a defendant's ability to "pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"). Nevertheless, Columbia's ability to withstand a greater judgment is highly uncertain given its recent issues with federal funding and having $400 million worth of government grants and contracts recently canceled which has reportedly put an "intense" strain on the University's finances.[12] Accordingly, this factor weighs in favor of Settlement.

## II.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS

For a settlement class to be certified, it must satisfy Rule 23(a), as well as at least one of the separate divisions of Rule 23(b). As explained below, the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3) for preliminary and final approval. Accordingly, for purposes of settlement only, the Court should conditionally certify the Settlement Class.

---

[12]    *Columbia University lays off nearly 180 researchers due to Trump funding cuts*, Reuters (May 6, 2025), https://www.reuters.com/world/us/columbia-university-lays-off-nearly-180-researchers-due-trump-funding-cuts-2025-05-06/

### A.    The Settlement Class Meets the Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a). "Sufficient numerosity can be presumed at a level of forty members or more." *In re Initial Pub. Offering Sec. Litig.* ("*IPO*"), 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Here, there are approximately 22,000 persons that fall within the Settlement Class definition. *See* McKenna Decl. ¶ 38.

#### 2.    Commonality

Commonality only requires the presence of a single common question of law or fact capable of class-wide proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); Fed. R. Civ. P. 23(a)(2). This case presents scores of common questions including: (i) whether Columbia submitted false data to USNWR; (ii) whether Columbia's USNWR rank was impacted by the false data; (iii) whether Columbia misrepresented its class sizes directly to students; (iv) whether Columbia's Tuition was impacted by its USNWR rank; (v) whether Settlement Class Members were charged a price premium; (vi)  whether Settlement Class Members are entitled to damages or other equitable relief; and (vii) the appropriate measure of any such damages and relief. These common questions of law and fact are also common to all Class Members. Accordingly, commonality is satisfied here.

#### 3.    Typicality

Typicality under Rule 23(a)(3) requires that "each class member's claim arises from the same course of events[,] and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Courts generally find typicality in cases alleging claims under GBL which affect all class members in the same fashion. *See Sharpe*, 2021 U.S. Dist. LEXIS 160177, at *9-11 (certifying GBL class,

stating: "the consumer protection statute at issue supplies an objective test, the claims are ideal for class certification because liability turns on what a *reasonable* consumer, not a particular consumer would do.") (italics in original). Here, Plaintiffs' and Class Members' claims arise from the same course of conduct involving Columbia's alleged misreporting of data to USNWR and directly to students and each Class Member allegedly paying premium Tuition. Plaintiffs' claims are typical of the Class Members' claims for purposes of the Settlement. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997) (typicality present where the legal and factual issues alleged by the plaintiffs (*i.e.*, whether defendants violated "constitutional, regulatory, and statutory provisions") were typical of the class members' claims); *Arredondo*, 341 F.R.D. at 52 (finding typicality in university class action where the "contract at issue was a standardized contract all students signed"); *Newman v. Bayer Corp.*, 348 F.R.D. 567, 580 (S.D.N.Y. 2025) (finding typicality where "[p]laintiffs were exposed to and allegedly relied upon [d]efendant's advertising and business practices in purchasing [the product], which they allege was at inflated prices due to the misrepresentations.").

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000). As discussed above, there are no conflicts between Plaintiffs and Class Members. Plaintiffs' interest in proving liability and damages wholly aligns with the Settlement Class's interest. Further, Class Counsel are highly experienced in complex class actions and are adequate class counsel.

### B. The Class May Be Certified Under Rule 23(b)(3)

Rule 23(b)(3) certification is proper where the action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). To satisfy Rule 23(b)(3), Plaintiffs must conditionally establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

"If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs. Antitrust Litig*., 2014 U.S. Dist. LEXIS 180914, at \*194 (E.D.N.Y. Oct. 15, 2014).  To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483 (ellipses in original).

Here, if there were no Settlement, common questions would have predominated over individual ones. Several courts have found that common issues, such as those in this Action (*see supra*), predominate over individualized issues in GBL and university class actions. *See Sharpe*, 2021 U.S. Dist. LEXIS 160177, at \*9-11; *Arredondo*, 341 F.R.D. at 53; *Newman*, 348 F.R.D. at 585 (finding predominance in GBL class action); *Andrews v. Sazerac Co.*, 2025 U.S. Dist. LEXIS 397, at \*29 (S.D.N.Y. Jan. 2, 2025) (same). Plaintiffs and all Class Members must answer the same questions regarding whether Columbia misreported data to USNWR in an effort to climb the UNSWR rankings and, in turn, be able to charge greater Tuition. Class Members would need to establish the same facts for liability and develop a common damages methodology to quantify the impact of the same harm. As these common questions are central and determine the liability and damages for all Settlement Class Members, such issues predominate over individualized issues.

24

Furthermore, Justice Ginsburg reasoned that "suits seeking statutory damages are arguably best suited to the class device because individual proof of actual damages is unnecessary." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445 (2010) (Ginsburg, J., dissenting). Therefore, the Settlement Class satisfies Rule 23(b)(3).

### 2. Superiority

Plaintiffs must also show that a class action is superior to individual actions.[13] Here, a class action is the superior method for the fair and efficient adjudication of this Action. *First*, Settlement Class Members are numerous and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004) ("*Currency Conversion I*").

*Second*, many Class Members have neither the incentive nor the means to litigate these claims individually. No Class Member other than the current and former plaintiffs "has displayed any interest in bringing an individual lawsuit." *See Meredith Corp.*, 87 F. Supp. 3d at 661. The damages most Class Members suffered individually do not compare to the considerable expense and burden of individual litigation. This makes it uneconomic for an individual to protect his/her rights through an individual suit. A class action allows claimants to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion I*, 224 F.R.D. at 566.

---

[13]    Superiority considers: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

*Third*, the prosecution of separate actions by hundreds (or thousands) of individual Settlement Class Members would impose heavy burdens upon the Court. It would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class. Thus, both prongs of Rule 23(b)(3) are satisfied for purposes of the Settlement.

## III.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND STRATEGIC CLAIMS SERVICES AS SETTLEMENT ADMINISTRATOR AND ESCROW AGENT

Due process and Rule 23 require that the Settlement Class receive adequate notice of the Settlement. *Wal-Mart*, 396 F.3d at 114. To be adequate, the method(s) used to issue notice must be reasonable. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983). The Notice Plan will inform Settlement Class Members of the substantive terms of the Settlement as well as: (i) the nature of the Action; (ii) the definition of the Settlement Class certified; (iii) the Settlement Class's claims, issues, or defenses; (iv) that a Settlement Class Member may enter an appearance through an attorney; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice Plan and forms of notice (*see* SA, Exs. C-D) are "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  The Notice Plan includes a direct mailing of the Short Form Notice along with the Claim Form via U.S.P.S. first-class mail to Settlement Class Members, as well as transmission of the Short Form Notice to Settlement Class Members by email. SA, Ex. C; McKenna Decl. ¶ 48. The Short Form Notice will include the address of the Settlement Website and direct Class Members to review the Settlement and the Long Form Notice (SA, Ex. D) on the Settlement Website. Given the size of this Settlement Class and that Columbia knows the identity of each

Settlement Class Member and has their contact information, mailing and emailing the Short Form Notice is an efficient and effective means to directly inform Settlement Class Members of the Settlement. McKenna Decl. ¶ 48.

The Settlement Website will serve as a one-stop resource by which Class Members can access relevant documents relating to the proposed Settlement. McKenna Decl. ¶ 50. On the website, Class Members can review and obtain: (i) the Settlement Agreement and supporting exhibits; (ii) the Long Form Notice, which provides details of the key facts of this Action and this Settlement in plain, easily understood language; (iii) the Short Form Notice; (iv) the Claim Form; (v) key Court filings, and (vi) updates and developments about the Action. *Id*. The Settlement Administrator will also operate a toll-free number with automated answers to Class Members' questions. *Id.*

Class Counsel recommends that Strategic Claims Services ("SCS") be appointed as the Settlement Administrator. SCS liaised with Class Counsel regarding the Notice Plan and distribution process and will be administering the claims in this Action. SCS has significant experience in administering class action settlements, including college tuition refund settlements. *See* Decl. of Paul Mulholland ¶¶ 4-6; McKenna Decl. ¶ 47. The Administration and Notice Costs incurred by SCS will be paid out of the Settlement Fund. McKenna Decl. ¶ 51. SCS will also administer the Settlement Fund Account. SA ¶¶ 3.1; 4.1-4.6; McKenna Decl. ¶ 51.

## IV. PROPOSED SCHEDULE OF EVENTS

In Appendix A, Plaintiffs propose a schedule of events. If the Court agrees, Plaintiffs request that the Court schedule the Final Approval Hearing for a date no earlier than one hundred forty (140) days after the entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the scheduled date for the Final Approval Hearing.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

Motion for Preliminary Approval and enter the accompanying Preliminary Approval Order.

Dated: June 30, 2025
      New York, New York

                                    Respectfully submitted,

                                    **GAINEY McKENNA & EGLESTON**

                                    */s/ Thomas J. McKenna*
                                    Thomas J. McKenna
                                    Gregory M. Egleston
                                    Christopher M. Brain
                                    260 Madison Avenue, 22nd Floor
                                    New York, NY 10016
                                    Telephone: (212) 983-1300
                                    Email: tjmckenna@gme-law.com
                                    Email: gegleston@gme-law.com
                                    Email: cbrain@gme-law.com

                                    ***Counsel for Plaintiffs and the Proposed Class***

APPENDIX A

| PROPOSED SCHEDULE OF EVENTS | |
| --- | --- |
| **Event** | **Timing** |
| Notice to the Class commences Date ("Notice Date"). | No later than thirty (30) days after the Court enters the Preliminary Approval Order |
| Deadline to file Settlement Administrator's Declaration regarding implementation of Notice Plan. | No later forty-five (45) days after the Notice Date |
| Deadline to file Motion for Final Approval of the Settlement. | No later than forty-five (45) days after the Notice Date. |
| Deadline to File Class Counsel's Motion for Attorneys' Fees and Expenses and Plaintiff's Request for Service Awards. | No later than forty-five (45) days after the Notice Date. |
| Postmark Deadline for Requests for Exclusion (Opt-Outs). | No later than sixty (60) days after the Notice Date ("Opt-Out Deadline"). |
| Filing and Service Deadline for Objections. | No later than sixty (60) days after the Notice Date. |
| Settlement Payment Election Filing Deadline. | No later than sixty (60) days after the Notice Date. |
| Deadline to File Opt-Out List and Settlement Administrator Declaration. | No later than five (5) Business Days after Opt-Out Deadline. |
| Deadline to File Settlement Administrator Declaration to Distribute the Claims Payments. | No later than fifteen (15) days after the Settlement Payment Elections Deadline. |
| Deadline to Complete Discovery Concerning Objections. | No later than thirty (30) days after the Deadline for Objections. |
| Deadline to File Oppositions to Objections/Reply Memorandum in Support of Motions. | No later than thirty (30) days after the Deadline for Objections. |
| Final Approval Hearing. | At least one hundred forty (140) days after entry of the Preliminary Approval Order. |

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)</u>**

I hereby certify that the document complies with the word-count limitations imposed by Local Civil Rule 7.1(c). The foregoing document contains 8,676 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and any required certificates.

*/s/ Thomas J. McKenna*
Thomas J. McKenna

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 30, 2025, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants.

*/s/ Thomas J. McKenna*
Thomas J. McKenna
