UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: COLUMBIA COLLEGE RANKINGS ACTION | Case No. 1:22-cv-05945-PGG<br><br>(Consolidated with Case No. 1:22-cv-06567-PGG) |

### DECLARATION OF THOMAS J. McKENNA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, THOMAS J. McKENNA, declare as follows:

1. I, Thomas J. McKenna, am a member of the law firm of Gainey McKenna & Egleston ("GM&E"), counsel for Plaintiffs Ravi Campbell, Student B, Raphael Silverman, and Bruce Acosta ("Plaintiffs") in the above-captioned class action (the "Action").

2. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The proposed Settlement includes a non-reversionary payment of $9,000,000 to benefit the Settlement Class and if approved, will fully resolve this Action.

3. As Class Counsel,[1] I have overseen all material aspects of the litigation of the Action. In addition, I was involved in the negotiation of the terms of the Settlement, which is fully supported by Plaintiffs. Accordingly, I have personal knowledge of the following facts and if called upon to testify, could and would testify competently thereto.

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as set forth in the Stipulation and Agreement of Class Action Settlement ("Settlement Agreement" or "SA"), attached as Exhibit 1 hereto.

## BACKGROUND OF THE ACTION

**Factual Background**

4.      The Action arises from Defendant Trustees of Columbia University in the City of New York's ("Defendant", the "University" or "Columbia") submission of allegedly false data to U.S. News & World Report ("USNWR") in connection with USNWR's *Best National Universities* rankings, and Columbia's direct advertising of the same allegedly false information to prospective and continuing students.

5.      In the United States, universities compete for students. One way of attracting prospective students to apply to a university is for that university to place higher in the ranking tables than competitor universities. While there are a number of institutions that rank universities in the United States, the USNWR *Best National Universities* rankings are one of the most popular university ranking tables in the United States. As one of the most prominent ranking institutions, the USNWR rankings influence prospective university applicants. In addition, universities that place higher in USNWR's rankings are allegedly able to charge a higher tuition fee than their lower-ranked competitors (*i.e.*, a premium).

6.      Plaintiffs allege that, among other things, Columbia consistently reported to USNWR, and others, including prospective students, that over 80% of its classes had fewer than 20 students, allegedly giving Columbia the highest percentage of small class sizes of any university in the United States. Plaintiffs allege that, in part, as a result, Columbia's USNWR ranking steadily rose from 18th place in 1988 to 2nd place in 2022.

7.      Plaintiffs also allege that Columbia directly advertised the same false information regarding class sizes to prospective applicants and continuing students via its website, recruitment brochures, press releases, and other forums, thereby enticing those prospective applicants and continuing students to enroll, or re-enroll, at Columbia.

8. Plaintiffs allege that in connection with Columbia's artificially inflated USNWR rank and false statements, it was able to, and did, charge a higher tuition fee than it should have done. As a result, Plaintiffs allege that they were harmed in paying more for their tuition at Columbia.

9. The Action alleges that the truth was revealed on February 28, 2022 when Michael Thaddeus, Professor of Mathematics at Columbia, published a blog post alleging that Columbia misreported data to USNWR that was used to calculate Columbia's USNWR rankings. Thereafter, Columbia was downgraded from 2nd place to 18th place in the USNWR rankings.

10. Columbia has at all times denied all alleged wrongdoing, including that it overcharged the Settlement Class, or that the Settlement Class suffered any damage. SA ¶ 1.16.

**Procedural Background and Settlement Negotiations**

11. On July 12, 2022, Plaintiff Campbell filed the first complaint against Defendant, alleging, among other things, that Defendant charged Plaintiff a price premium tuition. Plaintiff Campbell asserted claims under NY General Business Law ("GBL") §§ 349 and 350, for breach of contract, and for unjust enrichment against Defendant. ECF No. 1.

12. On August 2, 2022, former plaintiff Student A filed a second complaint asserting similar claims to Plaintiff Campbell. Then, on September 8, 2022, following a joint stipulation between Plaintiff Campbell, Student A, and Defendant, Student A's action was consolidated into Plaintiff Campbell's Action, establishing the above-captioned consolidated action (*i.e.*, the "Action"). ECF No. 13.

13. Following consolidation, on November 28, 2022, Plaintiff Campbell and Student A filed a Consolidated Class Action complaint in the Action and, in doing so, added Plaintiff Student B as well as former plaintiffs Students C and D to the Action. ECF No. 27.

14. On December 16, 2022, the above-referenced plaintiffs then filed an Amended

3

Consolidated Class Action Complaint in this Action. ECF No. 32. Following this, on December 23, 2022, Defendant filed a letter-motion with the Court requesting a pre-motion conference and to permit Defendant to file a motion to dismiss. ECF No. 33. Plaintiffs responded to the letter-motion (ECF No. 34), and on January 20, 2023, the Court set a briefing schedule for the motion to dismiss. ECF No. 42.

15. On March 13, 2023, Defendant filed its motion to dismiss the Amended Consolidated Class Action Complaint. ECF Nos. 43-44, 46. That same day, per the Court's bundling rule, Plaintiffs filed their opposition (ECF No. 45), and Defendant filed its reply. ECF No. 47.

16. On March 26, 2024, the Court ruled on Defendant's motion to dismiss, dismissing Plaintiff Campbell's and former plaintiffs Student A, C, and D's claims, and upholding Plaintiff Student B's NY GBL claims and giving Plaintiffs Campbell and Student B leave to amend their complaint to re-plead their breach of contract claim. ECF No. 51.

17. Pursuant to the Court's order, Plaintiffs Campbell and Student B filed a motion for leave to amend their complaint on April 8, 2024. ECF Nos. 57-58. Defendant filed its opposition to the motion on May 2, 2024 (ECF No. 66) and Plaintiffs Campbell and Student B filed their reply on May 22, 2024. ECF No. 69.

18. On August 12, 2024, the Court granted Plaintiff Campbell's and Student B's motion for leave to amend, thus allowing the amended breach of contract claim to proceed. ECF No. 74. Accordingly, Plaintiffs Campbell and Student B filed the Second Amended Consolidated Class Action Complaint in this Action. ECF No. 78. Thereafter, on September 3, 2024, Defendant filed its Answer to the Second Amended Complaint. ECF No. 79.

19. Following the Court's order on the motion to dismiss (ECF No. 51), and throughout 2024, the Parties commenced formal discovery. ECF No. 60. On April 25, 2024, the Parties exchanged their initial disclosures. Thereafter, beginning May 16, 2024, the Parties

served their first requests for production ("RFPs") and interrogatories. At this time, the Parties had initial discussions regarding a potential mediation and agreed that Defendant would prioritize the production of certain categories of documents to aid with the proposed mediation.

20. While the Parties were responding to the initial RFPs and interrogatories, the Parties negotiated the terms of both an ESI Protocol and a Confidentiality and Protective Order, each of which were approved by the Court on August 12, 2024. ECF Nos. 72-73.

21. The Parties responded to the initial RFPs and interrogatories in June 2024. After reviewing the discovery responses, Plaintiffs identified certain issues and served a deficiency letter on Defendant on July 1, 2024. The Parties subsequently engaged in a meet-and-confer regarding the purported deficiencies on July 18, 2024, and on September 6, 2024, Defendant sent Plaintiffs its formal response to the letter. The issues identified by Plaintiffs were then held in abeyance pending a mediation that was being scheduled.

22. On June 6, 2024, Plaintiffs served a second set of RFPs on Defendant, which Defendant responded to in July 2024.

23. Then, beginning in July 2024, the Parties also negotiated the custodians and search terms that Defendant would use in searching for and producing responsive documents to Plaintiffs. The Parties engaged in back-and-forth negotiations regarding the custodians and search terms, debating issues of, *inter alia*, relevance, responsiveness, and burden. Then, in September 2024, the Parties agreed on an initial list of custodians and search terms for Defendant to apply in its searches.

24. Defendant produced the first batch of documents on September 18, 2024, which Class Counsel diligently reviewed, analyzed, and indexed. Thereafter, and following Class Counsel's regular requests for an update regarding forthcoming productions, Defendant made an additional five (5) document productions on October 16, 2024, November 18, 2024, December 11, 2024, January 20, 2025, and February 22, 2025. In total, Defendant produced

8,955 pages of documents, in addition to re-producing 8,358 pages of documents that were initially produced for mediation purposes. Class Counsel diligently reviewed, analyzed, and indexed all of the documents produced by Defendant and, from February 2025, utilized e-discovery software to maintain the documents and aid the review process.

25. On September 27, 2024, Plaintiffs Campbell and Student B noticed a Rule 30(b)(6) deposition which, among other things, set forth, with particularity, the topics that Plaintiffs sought to obtain testimony on. Shortly thereafter, on October 3, 2024, Plaintiffs noticed the depositions of seven (7) individuals.

26. Also on September 27, 2024, Plaintiffs served a subpoena on third-party USNWR to produce documents and testify at a deposition. USNWR objected to the third-party subpoena and, following this, Class Counsel engaged in a number of meet-and-confers with counsel for USNWR. Eventually, USNWR agreed to produce certain documents to Plaintiffs. On January 14, 2025, USNWR made its first document production and, thereafter, made a second and final production on January 20, 2025. In total, USNWR produced 780 pages of documents.

27. Also during this time, beginning around August 2024, Plaintiffs hired a statistical expert to develop an initial damages model to assist with the forthcoming mediation and thereafter. In connection with this, Class Counsel engaged in a number of meetings with the expert to discuss the issues in the Action and a robust method of calculating damages. Ultimately, Plaintiffs' expert developed a damages model and estimated the damages suffered by the Class. This information was then shared with Defendant's Counsel and the Mediator in January 2025 prior to the mediation.

28. On October 24, 2024, while the Parties negotiated the logistics of a mediation, and following a request by the Parties, the Court entered an amended case management order which extended certain discovery deadlines to enable the Parties to focus on exchanging

discovery targeted specifically for mediation and also engage in said mediation. ECF No. 85.

29. While engaging in the aforementioned formal discovery, the Parties agreed to participate in mediation to assess whether a resolution could be reached. After negotiating the format and logistics of any mediation, the Parties agreed to an in-person mediation with the Honorable Diane Welsh, U.S.M.J. (Ret.) of JAMS (the "Mediator") in Philadelphia, PA on January 21, 2025. In advance of the mediation, having already engaged in significant discovery, the Parties drafted and exchanged detailed mediation statements setting forth their respective positions, as well as submitting confidential *ex parte* mediation statements to the Mediator. On January 21, 2025, the Parties participated in the in-person arm's-length mediation, however, they ended the mediation without reaching an agreement. Accordingly, the Parties immediately continued their discovery efforts with Plaintiffs raising a number of discovery issues with Defendant, including scheduling the previously noticed depositions and the timing of forthcoming documents.

30. On February 5, 2025, Plaintiffs served their third set of RFPs on Defendant, as well as their second set of interrogatories. That same day, Plaintiffs also sent Defendant a letter raising a number of issues that were previously raised in the July 2024 deficiency letter but subsequently held in abeyance pending the mediation. Plaintiffs also requested an additional eight (8) custodians and six (6) search terms for Defendant to use in its search for responsive documents. In connection with the February 5 letter and request regarding search terms and custodians, the Parties engaged in a meet-and-confer on February 10, 2025. While the Parties resolved certain issues, a number of discovery issues were left unresolved. Accordingly, the Parties jointly drafted a letter requesting a pre-motion conference to address the unresolved discovery disputes.

31. Meanwhile, on February 24, 2025, Plaintiffs Silverman and Acosta joined the Action as Plaintiffs alongside Campbell and Student B and, pursuant to a joint stipulation

between the Parties, the Third Amended Consolidated Class Action Complaint was filed in this Action on March 7, 2024, to which Defendant filed its Answer on March 10, 2025. ECF Nos. 99, 102.

32. Shortly after the discovery efforts had re-commenced, the Parties agreed to a second mediation with the Mediator on February 27, 2025, via Zoom. The Parties submitted supplemental *ex parte* mediation statements to the Mediator in advance of the mediation. During the mediation, the Parties engaged in hard fought, arm's-length negotiations with the assistance of the Mediator; exchanging competing theories, information, demands, and counter-demands. While the Parties made significant progress during this second mediation, it nevertheless ended without a resolution.

33. Following this, the Parties continued with discovery. While preparing their responses and objections to Plaintiffs' third RFPs and second interrogatories, Defendant requested a meet-and-confer with Plaintiffs to clarify certain of Plaintiffs' discovery requests, which was held on March 10, 2025. While the issues raised at the March 10 meet-and-confer were resolved, a number of previously identified issues remained unresolved, and so the Parties finalized the above-mentioned joint letter requesting a pre-motion conference and filed it with the Court on March 6, 2025. ECF No. 100.

34. After filing the letter requesting a pre-motion conference, the discovery dispute was referred to the Honorable Henry J. Ricardo, U.S.M.J. On March 27, 2025, Judge Ricardo held a telephonic conference to discuss whether his recusal would be necessary and subsequently ordered the Parties to file a letter requesting his recusal if they believed it to be necessary. ECF No. 109. On April 10, 2025, Plaintiffs filed a letter requesting Judge Ricardo's recusal (ECF No 114), and on April 22, 2025, the Parties informed the Court that the discovery dispute had been resolved. ECF No. 120.

35. Meanwhile, in the weeks following the February 27, 2025 mediation, the Parties

8

engaged in additional negotiations through the Mediator while continuing to engage in discovery and, eventually, the Parties reached an agreement in principle.

36. After reaching an agreement in principle, the Parties then negotiated certain material terms of the settlement. Through a number of back-and-forth exchanges, the Parties reached an agreement on the material terms of the settlement and documented them in a binding term sheet (the "Term Sheet"). Thereafter, the Parties continued to formalize the terms of the Settlement in the Settlement Agreement.

## THE SETTLEMENT

37. Plaintiffs and Class Counsel were well-informed regarding the strengths and weaknesses of Plaintiffs' claims before reaching the Settlement. At all times while negotiating and executing the proposed Settlement with Columbia, Class Counsel were each experienced in prosecuting class action cases, particularly those involving universities. *See* Exhibit 2. Prior to reaching the Settlement, Plaintiffs also had the benefit of information and documents exchanged during the discovery process and developed from Class Counsel's investigations and analysis, including through third-party discovery and engaging an expert, thereby enhancing Class Counsel's understanding of the strengths and weaknesses of the legal claims asserted in the Action. In addition, at all times Columbia was represented by skilled counsel from Debevoise & Plimpton LLP, an internationally recognized law firm with extensive experience in class action litigation.

38. The Settlement involves a structure and terms that are common in class action settlements, including an *In Camera* Supplement that provides Columbia with a qualified right to terminate the Settlement Agreement under certain conditions before final approval. SA ¶ 6.2.

39. Based on Class Counsel's investigation and Columbia's representations, there are approximately 22,000 geographically dispersed persons believed to fall within the Settlement Class definition.

**The Settlement Class**

40. The Settlement Class is defined as follows:

All undergraduate students enrolled in any of the Columbia College, Columbia Engineering, or General Studies programs who paid Tuition Fees and/or Mandatory Fees to Columbia University for the Fall 2016 through Spring 2022 semesters (the "Class Period").[2]

*See* SA ¶ 2.44.

**The Distribution Plan**

41. The Net Settlement Fund will be distributed first by subtracting any Court-approved disbursements. SA ¶¶ 2.24, 3.2. After that, Settlement Payments will be distributed to Authorized Claimants on an equal basis. SA ¶¶ 7.1, 7.2.

42. The Distribution Plan will utilize information in Columbia's possession from its records regarding Settlement Class Members' addresses (the "Class List") to fairly, quickly and efficiently provide direct notice to Class Members and distribute settlement funds. All mailing addresses in the Class List will be verified by the Settlement Administrator prior to Notice being sent to them.

43. Settlement Class Members who submit a simple Claim Form, substantively in the manner and form as Exhibit 3 hereto, will receive an equal share of the Net Settlement Fund. Class Members are not required to submit any other documentation to collect their share of the Net Settlement Fund. SA ¶ 7.2.

44. Settlement Class Members will be provided with a unique claimant code and will be asked to complete a Claim Form using that code. SA ¶ 7.3. The Claim Form will allow

---

[2] Specifically included in the Class are students who paid any amount of Tuition Fees or Mandatory Fees from any source other than a scholarship, grant, or tuition remission from Columbia. Specifically excluded from the Class are: (i) students who did not pay any Tuition Fees or Mandatory Fees during the Class Period, *e.g.*, who received a full-ride scholarship; (ii) Columbia, any Person in which Columbia has a controlling interest, and Columbia's officers, directors, trustees, legal representatives, successors, subsidiaries, and assigns; (iii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iv) any individual that timely and validly opts out of the Settlement.

each Settlement Class Member to select the method by which he or she will receive the Settlement Payment, either via check or an electronic payment platform and/or supply an updated mailing address. *Id*. To the extent there are unclaimed payments, those funds will be reallocated *pro rata* to Settlement Class Members who did cash their check or complete the Claim Form, so long as it is economically feasible in the opinion of Class Counsel. SA ¶ 7.4.3.

**Attorneys' Fees**

45. Class Counsel will seek no more than one-third of the Settlement Fund in attorneys' fees, which may be paid from the Settlement Fund following the Effective Date, consistent other class action settlements approved in this District. SA ¶ 17.1. Counsel will also seek their reasonably incurred litigation expenses in an amount not to exceed $75,000. *Id.* Finally, Plaintiffs will also seek Service Awards totaling no more than $25,000 each. SA ¶ 16.1.

**The Notice Plan**

46. The proposed Settlement Administrator, Strategic Claims Services ("SCS"), liaised with Class Counsel regarding the Notice Plan. *See* SA, Exs. C, D; *see also* Declaration of Paul Mulholland filed contemporaneously herewith. Columbia has also reviewed the Notice Plan and has no objection to it.

47. Class Counsel recommends that SCS be appointed as the Settlement Administrator. SCS has extensive experience in class action administration and has designed notice plans that have been approved in numerous complex class actions. Decl. of Paul Mulholland, ¶¶ 4-6.

48. The proposed Notice Plan and related forms of notice (*see* SA., Exs. C and D) are reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

49. The Short Form Notice and Claim Form will be sent via first class U.S. Mail, postage pre-paid, to all Settlement Class Members located in the United States for whom a

mailing address is provided on the Class List, or whose address can be found by SCS using its standard address verification techniques. Digital versions of the Short Form Notice and Claim Form will also be sent by email to all Settlement Class Members for whom an emailing address is provided on the Class List.

50. The Short Form Notice will contain the Settlement Website address and direct Settlement Class Members to review the Settlement and the Long Form Notice posted on the Settlement Website, as well as provide instructions on how to receive their share of the Net Settlement Fund. Given the size of this Settlement Class and that Columbia has mailing and email addresses for the Class Members, *i.e.*, Columbia's current and/or former students, the proposed Notice is the most efficient and effective means to directly inform Settlement Class Members of the Settlement.

51. The dedicated Settlement Website created by SCS will serve as a one-stop source by which Class Members can access relevant documents relating to the proposed Settlement. On the Settlement Website, Settlement Class Members can review and obtain: (i) the Settlement Agreement; (ii) the Long Form Notice, which provides details of the key facts of this case and this Settlement in plain, easily understood language; (iii) a sample of the Short Form Notice mailed to Settlement Class Members; (iv) the Claim Form that allows Settlement Class Members to elect their method of payment; (v) key Court filings; and (vi) updates and developments about the case. The Settlement Administrator will also operate a toll-free number with automated answers to Settlement Class Members' questions.

52. The Notice Plan and settlement administration costs incurred by SCS will be paid out of the Settlement Fund. SCS will also administer the Settlement Fund Account and has performed this service in other class action settlements.

53. Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation and Agreement of Class Action Settlement dated June 30, 2025.

    a. Attached to the Settlement Agreement as **Exhibit A** is a true and correct copy of the [Proposed] Preliminary Approval Order that Plaintiff requests be entered by the Court.

    b. Attached to the Settlement Agreement as **Exhibit B** is a true and correct copy of the [Proposed] Final Approval Order and Judgment to be entered by the Court that would dismiss the above-captioned Action pursuant to the Settlement.

    c. Attached to the Settlement Agreement as **Exhibit C** is a true and correct copy of the Short Form Notice to be distributed to Settlement Class Members, to which a unique claimant code will be added for each Class Member.

    d. Attached to the Settlement Agreement as **Exhibit D** is a true and correct copy of the the Long Form Notice to be posted to the Settlement Website.

54. Attached hereto as **Exhibit 2** is a true and correct copy of the firm résumé of Gainey McKenna & Egleston.

55. Attached hereto as **Exhibit 3** is a true and correct copy of the Claim Form to be distributed to Settlement Class Members as well as posted to the Settlement Website.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 30, 2025
       New York, New York

                                              */s/ Thomas J. McKenna*
                                              Thomas J. McKenna